**Dave NELSON, Appellee,**

v.

**AGRO GLOBE ENGINEERING, INC., Appellant.**

**No. 96–1929.**

Supreme Court of Iowa.

May 28, 1998.

**660**

David L. Charles and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellant.

Kenneth L. Butters of Dreher, Simpson & Jensen, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

We granted Agro Globe Engineering, Inc.'s (AGE) application for further review from a decision of the court of appeals modifying the district court's rewriting of a restrictive covenant in an employment agreement. We find neither the court of appeals nor the district court properly considered the restrictive covenant in the employment agreement between Dave Nelson and AGE. We vacate the decision of the court of appeals and reverse and remand to the district court with instructions.

### I. Background Facts and Proceedings.

AGE is a wholly owned subsidiary of SASS Enterprises, Ltd., a steel structural manufacturer that produces equipment for use in drying agricultural seed products. AGE provides project management services to seed producers who purchase equipment from SASS. The company subcontracts out the construction of the actual facilities. Most of AGE's business is obtained through competitive bidding. The company has pursued projects around the world, but with one exception of a project in Canada, has only successfully bid on projects in the United States. AGE has bid on projects involving many different types of seeds but has only obtained contracts for corn and soybean facilities.

Dave Nelson began working for AGE in November, 1990. He was hired for his expertise and contacts in the project management business. As with many new businesses, AGE was not immediately profitable. SASS provided the financing AGE needed. In 1994, SASS was faced with financial problems and needed to recoup funds loaned to AGE. Six individuals invested a combined total of $166,000 in AGE. The investors viewed Nelson as critical to the success of AGE and conditioned their investment on his signing a new employment contract.

When he first started work for AGE, Nelson signed an employment contract. The contract contained a noncompete agreement that limited his employment upon his leaving AGE. The agreement restricted his activities for one year in a 600–mile area surrounding Des Moines. In December 1994, Nelson exe-

cuted a new agreement (1994 agreement). Curiously, the new agreement did not contain a covenant not to compete similar to the prior agreement. Instead, the 1994 agreement had a clause restricting Nelson's activities, the term of which coincided with the term of the agreement. The clause provided:

> Until December 31, 1998, [Nelson] will not without the written consent of the Company, directly or indirectly, engage, assist or have any active interest in (whether as a principal, partner, stockholder, officer, director or otherwise) or enter the employment of or act as an agent for or adviser or consultant to any person, corporation or business entity which is or is about to become directly or indirectly engaged in, the development, manufacture, or sale of any product or service which competes with or is similar to any product or service of the Company, or any affiliate of the Company.
>
> The foregoing restriction shall be limited to the United States of America and those foreign countries and those states, provinces, districts or similar subdivisions of foreign countries in which the Company manufactures or sells or proposes to manufacture or sell any of its products or services.

Nelson resigned his position with AGE effective October 31, 1995. Subsequently, he received an offer to work for a competitor. After the competitor was notified of the terms of the employment agreement between Nelson and AGE, the offer was withdrawn. Nelson brought a declaratory relief action seeking reformation of the restrictive covenant in the 1994 agreement on the basis that it was unreasonable in both its geographical and temporal limitations.

The district court found the covenant in the 1994 agreement was unreasonable. On September 4, 1996, the court ordered

> that until October 31, 1997, Dave Nelson shall not solicit, divert or appropriate to any Competing Business, directly or indirectly, on his own behalf or in the service of or on behalf of any Competing Business, or attempt to solicit, divert or appropriate to any such Competing Business any person or entity who was a customer of AGE during the time that Dave Nelson was employed by AGE. For the purposes of

this Order "Competing Business" means any business engaged in the design and fabrication of plants and equipment, or facilities for the separation, classification, treatment or other processing of corn or soybeans.

AGE appealed the decision of the district court. We transferred the matter to the court of appeals. On December 29, 1997, the court of appeals modified the order of the district court by adding a restriction which prohibited Nelson from working for AGE's four main competitors.

AGE petitioned for further review from this court. The basis for the petition rested on two grounds. First, that the modification by the court of appeals was essentially of no effect since the period of the noncompete order as rewritten by the district court had expired before the court of appeals modified the order. AGE argues, based on our holding in *Presto–X Co. v. Ewing*, 442 N.W.2d 85 (Iowa 1989), the duration of the noncompete agreement should have been extended by the court of appeals. Second, AGE urges both the district court and the court of appeals erred in finding the restrictive covenant was unreasonable as originally written.

## II. *Scope of Review.*

 The parties to this action disagree as to the scope of review. Thus, it falls on this court to determine the nature of the dispute. The pleadings, relief sought, and nature of the case ordinarily determine whether a declaratory judgment action is legal or equitable. *Ernst v. Johnson County*, 522 N.W.2d 599, 602 (Iowa 1994). One important test in declaratory judgment actions for determining whether a case was tried in equity or law is whether the court ruled on evidentiary objections. *Id.*

Nelson styled his petition as a law action. The record, although a bit muddled because the trial court ruled on some objections but reserved ruling on others, indicates the case was tried at law. Our review therefore is for error.

### III. *Covenant for Exclusive Services.*

■ AGE urges the district court and the court of appeals erred when they examined the restrictive covenant of the 1994 agreement as a traditional post-employment noncompete agreement. AGE makes a distinction between noncompete agreements which limit an employee's activities once he or she ceases to work for the employer from the clause in the 1994 agreement which AGE claims only limited Nelson's activities during the term of the contract. The restrictive covenant in the 1994 agreement, AGE argues, should be viewed as one for exclusive services during a term of employment. Following this reasoning, AGE contends the covenant should not have been rewritten because Nelson was not prevented from earning a living nor did competition suffer as a result of the restriction.

Authorities also note the difference between the two types of restrictive covenants.

> Different considerations are involved in the enforcement of these two types of negative covenants. The primary purpose of a covenant not to accept employment with another during the term of the contract of employment is to secure the personal services of the employee, an injunction against its breach will be granted on the theory that breach of the contract will result in irreparable damage to the employer because of the loss of the services of his employee. The purpose of a covenant against competition is to prevent irreparable damage to the employer or former employer from the employee's engaging in competition with him.

42 Am.Jur.2d *Injunctions* § 105 (1969).

■ AGE contends covenants not to accept employment with another during the contract should be more broadly enforced than covenants to prevent competition. We agree. The mischief sought to be prevented by examining the reasonableness of a post-employment covenant not to compete looms less threateningly where the restrictive covenant merely limits an employee from competing with the employer during the term of the contract. *See* 54A Am.Jur.2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 957 (1996). The public's interest in competition is not normally endangered by such a covenant. Nor is the employee denied the opportunity to use his or her skills and knowledge to earn a living. We have stated that such a covenant is implied in every employment relationship. "[S]o long as the employee remains in the employer's service there is ordinarily an implied undertaking that he will not engage in any other service or business to the detriment of his employer's interest." *Gossard Co. v. Crosby,* 132 Iowa 155, 165, 109 N.W. 483, 487 (1906).

The covenant at issue in the 1994 agreement only restricts Nelson's activities during the term of his employment contract. It is not so broad or long lasting so as to be unduly burdensome to Nelson. Nelson signed a four-year employment agreement. If he had worked for AGE for the entire span of the agreement, according to its terms, the day after his employment ended he was free to begin working for a competitor or to go into business for himself. The four-year time period was what AGE felt was necessary to give it a chance to become firmly established in the project management business. It does not appear to be an attempt to make it impossible for Nelson to pursue other opportunities.

The covenant for exclusive services in the 1994 agreement was not unreasonable as written and should not have been modified.

### IV. *Availability of Injunctive Relief.*

AGE has requested an injunction to prevent Nelson from working for its competitors in violation of the restrictive covenant. During the pendency of the court of appeals' decision, Nelson went to work for one of the competitors eventually listed in the covenant as modified by the court of appeals.

■ Injunctive relief is an extraordinary remedy. *Presto–X,* 442 N.W.2d at 89. It should only be granted if the requesting party has no adequate relief at law and will incur irreparable damage. *Matlock v. Weets,* 531 N.W.2d 118, 122 (Iowa 1995). Courts should grant an injunction with caution and only when clearly required. *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 158 (Iowa 1993).

In cases involving restrictive covenants for exclusive services in employment agreements an injunction will be granted only if the services of the employee are unique and extraordinary and he or she cannot be readily replaced. 42 Am.Jur.2d *Injunctions* § 108 (1969). If the employee's skills or talents are easily replaceable, then the employer will not suffer irreparable damage by the loss of the particular employee's services.

AGE asserts that Nelson had unique contacts in the seed facility project management arena. The company claims he was initially hired for these contacts and his experience in the business. There is also evidence that the investors in AGE would not have made the investment without the knowledge that Nelson would continue his employment with AGE. However, Nelson was essentially a salesperson and we have said:

> [e]xperience, competency, and a high degree of efficiency in exploiting and selling any brand of goods are qualifications which can hardly be so rare as to require the aid of equity to prevent irreparable loss by an employer who finds himself compelled to substitute one sales[person] for another.

*Gossard Co.*, 132 Iowa at 176, 109 N.W. at 491. Whether Nelson's skills were unique and the loss of them will cause irreparable injury to AGE, is a question for the district court.

We vacate the decision of the court of appeals and remand the case to the district court. The district court should determine whether Nelson's skills were unique and, if so, whether AGE will suffer irreparable damage from the loss of the services. If the court finds both conditions are present, then AGE is entitled to injunctive relief fashioned by the district court in accordance with our decision in *Presto–X*. If the court does not find both conditions present, then equity will not aid AGE with an injunction and AGE will have to proceed at law.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**