A00A1319. NORTHSIDE HOSPITAL, INC. v. McCORD et al.
(537 SE2d 697)

PHIPPS, Judge.

Dr. Dale McCord and Atlanta Oncology Associates, P.C. (AOA) brought this action against the Hospital Authority of Fulton County, Northside Hospital, Inc., and Ridge Medical Center, Inc. Dr. McCord and AOA seek a judgment declaring a restrictive covenant in a sublease agreement between the parties unenforceable. Finding that plaintiffs have a substantial likelihood of success on the merits, and taking into consideration certain equitable factors,[1] the superior court granted plaintiffs interlocutory injunctive relief. Defendants appeal. We conclude that the trial court did not abuse its discretion in granting the interlocutory injunction[2] and, therefore, affirm.

Dr. McCord is a physician specializing in radiation oncology. He is a member of a group practice conducted by AOA. In addition to providing physician services, AOA owns and operates several radiation oncology service centers. The Hospital Authority of Fulton County owns and operates Northside Hospital.

In 1976, the Hospital Authority and Dr. McCord entered into an agreement styled "Northside Hospital Oncologist Contract." Under the agreement, Dr. McCord (and eventually AOA) became the exclusive provider of oncology services to the Northside Hospital Department of Radiation Therapy. Dr. McCord was made the medical director of the radiation department but was classified under the exclusive provider agreement as an independent contractor rather than as a hospital employee. He retained the right to engage in the

---

[4] Id.; see also *Miles v. Great Southern Life Ins. Co.*, 197 Ga. App. 540, 543 (2) (398 SE2d 772) (1990).

[1] See *Zant v. Dick*, 249 Ga. 799 (294 SE2d 508) (1982) (in application for interlocutory injunction, there should be balancing of conveniences and consideration of whether greater harm might be done by refusing than by granting the injunction).

[2] *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 540 (8) (484 SE2d 259) (1997).

private practice of medicine, so long as such practice was not conducted within a six-mile radius of the hospital and did not conflict with his contractual responsibilities to the hospital. The term of the agreement was initially a 20-year period, beginning in 1976 and ending in 1996, and was to continue from year to year thereafter until terminated by the mutual consent of the parties or for various specified reasons related to Dr. McCord's nonperformance or inability to perform his duties.

From the record, it appears that in 1990, AOA was developing a radiation oncology center in Alpharetta on land it owned; that AOA approached Northside in order to develop the facility on an adjacent tract owned by the hospital; and that, as negotiations between AOA and the hospital progressed, impending changes in the certificate of need law made it a practical necessity for AOA and Northside to develop the facility jointly.

In 1991, Dr. McCord, AOA, and the Hospital Authority entered into a "sublease agreement" for construction and operation of the radiation oncology center on Northside's Alpharetta tract, which is approximately 15 miles from the hospital. The sublease agreement is between Ridge Medical Center as primary landlord, the Hospital Authority as sublandlord, AOA as subtenant, and McCord as guarantor. Under the sublease, the Hospital Authority leased improvements to be constructed by Ridge Medical on real estate owned by the Hospital Authority and then subleased the premises to AOA for operation of the radiation oncology center. The term of the sublease is 20 years. The sublease agreement contains a restrictive covenant under which AOA agreed

that, during the term of this Sublease, and for a period of two (2) years following the expiration or termination of the term hereof, neither Subtenant, nor any shareholder, officer or director, or an affiliate of any of them, shall own any ownership interest in, manage, operate, control, participate in, be an employee of, or be involved, either directly or indirectly, with a radiation therapy/oncology center performing the services performed by Subtenant in the Premises, within a 25-mile radius of the Premises, other than the current facilities operated by Subtenant. . . .

The sublease agreement also gives the Hospital Authority the right to terminate the sublease upon the termination of its exclusive provider agreement with Dr. McCord. If the sublease is terminated, the Hospital Authority is given an option to purchase Ridge Medical Center's and AOA's interest in the premises.

After the Alpharetta oncology center became operational,

McCord and AOA continued as the exclusive provider of oncology services at Northside, treating some of Northside's patients at the Alpharetta facility. But when the initial term of the exclusive provider agreement ended in 1996, Northside terminated the contract after the superior court in a declaratory judgment action ruled that it had a right to do so. Northside then instituted an open staffing policy in radiation oncology services, and Dr. McCord and AOA brought this suit.

1. Traditionally Georgia courts divide restrictive covenants into covenants ancillary to an employment contract, which receive strict scrutiny and are not blue-penciled, and covenants ancillary to a sale of business, which receive much less scrutiny and may be blue-penciled.[3] There is also a middle level of scrutiny applicable to covenants found in professional partnership agreements.[4]

A restrictive covenant contained in an employment contract will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public.[5]

> Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances. A three-element test of duration, territorial coverage, and scope of activity has evolved as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied.[6]

In this case, the trial court determined that the covenant not to compete should receive the same strict scrutiny as a restrictive covenant ancillary to an employment contract. The court concluded that the covenant is overly broad and unreasonable in both its territorial limitation and the scope of the activity prohibited.

2. Northside first contends that invalidation of the covenant violates Georgia's public policy favoring freedom of contract.

A noncompetition covenant which imposes an unreasonable restraint on trade is void as against public policy.[7] "[A]ll people who

---

[3] *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289-290 (1) (498 SE2d 346) (1998).

[4] *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322, 325-326 (2) (320 SE2d 170) (1984).

[5] *McAlpin v. Coweta Fayette Surgical Assoc.*, 217 Ga. App. 669, 671 (1) (458 SE2d 499) (1995).

[6] (Citations and punctuation omitted.) Id. at 671-672.

[7] Id. at 671.

are capable of contracting shall be extended the full freedom of doing so *if they do not in some manner violate the public policy of this state.*"[8] The question, therefore, is whether the covenant at issue violates public policy. Resolution of this question turns upon considerations of reasonableness.

*Pittman v. Harbin Clinic Professional Assn.*[9] involved territorial limitations in noncompetition covenants found in a medical partnership agreement and physicians' employment contracts. The covenant in the medical partnership agreement was reasonable because the medical clinic in whose favor the . covenant was drawn drew its patients from the proscribed territory.[10] The covenant in the employment contracts was unreasonable because that covenant applied to a geographic area more expansive than the territory in which the clinic's patients were located.[11] Because Northside has not shown that the clinic draws patients from a 25-mile radius, the geographic limitation in the covenant appears unreasonable.

Moreover, the covenant does not merely bar AOA from operating a competing clinic. It prohibits any shareholder, officer, director, or affiliate of AOA from being involved in any capacity with a competing clinic. "Ordinarily, proscription of such a broad .scope of competing activity renders a noncompetition clause void. [Cit.]"[12]

3. Northside argues that the covenant in the sublease should not receive the same strict scrutiny as those found in employment agreements because the bargaining power of the parties in this case was relatively equal.

In *Herndon v. Waller,*[13] this court recently addressed the question of how to classify a covenant in a commercial lease prohibiting the lessee from competing with the lessor. Although there was no issue of unequal bargaining power in *Herndon,* we distinguished sale of business cases because the seller who covenants not to compete generally receives a part of the purchase price in compensation for his promise not to compete.[14] Noting an absence of evidence that the lessee in *Herndon* had received any consideration for the covenant not to compete, this court held that

[s]ince the covenant not to compete was not made by the

---

[8] (Emphasis supplied.) *Cash v. Street & Trail, Inc.*, 136 Ga. App. 462, 466 (221 SE2d 640) (1975).

[9] 210 Ga. App. 767 (437 SE2d 619) (1993).

[10] Id. at 769 (1); see also *McAlpin*, supra, 217 Ga. App. 669.

[11] *Pittman*, supra, 210 Ga. App. at 771 (4).

[12] *Allen*, supra, 225 Ga. App. at 538 (5) (a); see *Roberts v. Tifton Med. Clinic*, 206 Ga. App. 612, 614 (426 SE2d 188) (1992).

[13] 241 Ga. App. 494 (525 SE2d 159) (1999).

[14] Id. at 495.

seller in conjunction with the sale of a business but was made by (a lessee) in conjunction with (the lease of premises . . . ancillary to the operation of) a business, the covenant receives the severe scrutiny given restrictive covenants ancillary to an employment [agreement].[15]

Northside argues that *Herndon* is distinguishable because AOA received consideration for the noncompetition covenant by being relieved of the obligation to finance construction of the radiation oncology center. But lessees normally receive this type of consideration in exchange for assumption of their leasehold obligation to pay rent. Morever, construction financing would have been Ridge Medical's obligation. Whether AOA received consideration from the Hospital Authority for the covenant not to compete was an issue of fact which the trial court was authorized to resolve in AOA's favor.

Moreover, it has been held that the validity of restrictive covenants in commercial leases

is subject to the overriding requirements that, as to territoriality and/or duration, they be reasonably necessary to protect the interests of the covenantee, that they not impose greater restrictions upon the covenantor than are necessary for the covenantee's protection, and that they not unduly prejudice the interests of the public. [Cits.][16]

Application of this test authorized the trial court's interlocutory determination that the covenant at issue is unreasonable.

4. Northside charges the trial court with error in applying post-termination legal principles to a restrictive covenant in force during the term of the underlying agreement.

Northside relies on out-of-state cases such as *Nelson v. Agro Globe Engineering*.[17] *Nelson* holds that "[t]he mischief sought to be prevented by examining the reasonableness of a post-employment covenant not to compete looms less threateningly where the restrictive covenant merely limits an employee from competing with the employer during the term of the contract. [Cit.]"[18] We do not disagree with this general proposition. But it does not answer the question in this case, which is whether the restraints on competition imposed by the covenant during the term of the sublease and for a period of two years thereafter are reasonable.

---

[15] Id. at 496.
[16] *Webster v. Star Distrib. Co.*, 241 Ga. 270, 272 (a) (244 SE2d 826) (1978).
[17] 578 NW2d 659 (Iowa 1998).
[18] Id. at 662.

Northside also argues that the covenant should be held enforceable under OCGA § 13-8-2.1 (d). Northside's reliance on this statutory provision is misplaced, as it is part of a Code section that has been declared unconstitutional.[19]

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED JULY 19, 2000.

*Powell, Goldstein, Frazer & Murphy, James C. Rawls, Sara K. Wheeler, Holly A. Pierson,* for appellant.

*Gambrell & Stolz, Irwin W. Stolz, Jr., Robert G. Brazier, Seaton D. Purdom, Oliver & Winkle, David P. Winkle,* for appellees.

---

[19] *Jackson & Coker, Inc. v. Hart,* 261 Ga. 371 (405 SE2d 253) (1991).