A01A1316. SWARTZ INVESTMENTS, LLC v. VION PHARMACEUTICALS, INC.
(556 SE2d 460)

POPE, Presiding Judge.

In June 1997, Swartz Investments, LLC entered into a letter of agreement in which it agreed to assist Vion Pharmaceuticals, Inc. with a private placement to raise financing for Vion. By the end of August 1997, Swartz and Vion were able to raise $4,850,000 in financing from a number of investors. In connection with that financing, the parties signed a Placement Agent Agreement, containing a

---

"Non-Circumvention & Confidentiality of Proprietary Agent Information" clause.

The "Non-Circumvention" clause can be read in two parts.[1] The first part prohibits Vion for a five-year period from directly or indirectly contacting or negotiating with six named investors regarding an investment in Vion or any other company without Swartz's prior written permission. This portion also prevents Vion from entering into "any agreement or transaction" with the named investors or disclosing their names for the same time period without Swartz's permission. The second part requires that Vion pay Swartz a five percent commission should Vion accept an investment from one of the named investors through another agent within one year of the date of the "Last Closing" as defined in the subscription agreement.

Swartz contends that in June 1998, Vion directly contacted several of the investors identified in the noncircumvention clause as part of another private placement, which resulted in approximately $5,000,000 in additional financing. After learning of this, Swartz requested a five percent commission under the clause. Vion acquiesced and paid Swartz $250,000. Swartz asserts that nearly a year later, Vion again contacted Swartz investors, without Swartz's knowledge, and solicited additional financing. The company raised approximately $4,000,000 in total financing in this private placement. This time, Vion refused Swartz's request for a five percent commission.

Swartz subsequently sued Vion to recover its commission and alleged claims for breach of contract and quantum meruit. Vion filed

---

[1] The entire "Non-Circumvention" clause reads as follows:

7.1 *Non-Circumvention.* The persons or entities set forth on *Exhibit B* shall be considered, for purposes of this Agreement, the property of Agent. The Company on behalf of itself, its parent or its subsidiaries (collectively hereinafter referred to as "Company") agree not to circumvent, directly or indirectly, Agent's relationship with these investors, their parents or any of the investors' subsidiaries (collectively hereinafter referred to as "Investors") and Company will not directly or indirectly contact or negotiate with any of these Investors regarding an investment in the Company, or any other company, and will not enter into any agreement or transaction with Investors, or disclose the names of Investors, for a period of five (5) years from the date hereof without the prior written approval of Agent; provided, however, that notwithstanding the above, nothing contained in this Agreement shall prevent Company from, directly or indirectly, selling securities to the Investors through a public offering or from, directly or indirectly, contracting or negotiating with the Investors in satisfaction of Company's obligations under the Subscription Agreements entered into in connection herewith. In the event that the Company accepts an investment from an Investor or Investors (other than in a public offering) in a placement being arranged through an agent other than the Agent, during the period beginning on the date hereof and terminating on the first anniversary of the date of the Last Closing as described in the Subscription Agreement, the Company agrees to pay to the Agent a fee equal to five percent (5%) of all amounts invested by such Investor(s).

a counterclaim seeking declaratory judgment stating that the noncircumvention clause was an unenforceable restrictive covenant and requesting the return of the $250,000 fee it paid to Swartz in 1998. Vion moved for summary judgment on Swartz's claims and its counterclaim. After hearing oral argument, the trial court granted Vion summary judgment as to Swartz's claims, finding that the noncircumvention clause was an unenforceable restrictive covenant.[2] Swartz appeals.

1. Swartz argues that the trial court erred in its ruling because it contends that the noncircumvention clause is not a restrictive covenant and that the court should have applied a standard contract analysis to enforce the clause. This issue appears to be a question of first impression in Georgia.

Georgia law interprets restrictive covenants to be in partial restraint of trade and demands that they must meet several criteria in order to be enforceable: "[A] restrictive covenant . . . is considered to be in partial restraint of trade and will be upheld if the restraint imposed is [reasonable], is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public." *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992), quoting *Rakestraw v. Lanier*, 104 Ga. 188, 194 (30 SE 735) (1898).

Georgia courts have considered a number of different contractual provisions to be restrictive covenants, including covenants not to disclose and utilize confidential business information,[3] noncompetition clauses,[4] and nonsolicitation clauses.[5] A characteristic shared by each of these provisions is a prohibition, or at the very least a limitation, placed by one party on the other party's future business activities.

The noncircumvention provision in this case seeks to limit Vion's ability to conduct business directly or indirectly with the six named investors for a five-year period. Under the clause, Vion must obtain Swartz's written permission before it can contact or negotiate with the investors regarding any further investment in Vion or any other company and before it enters into any agreement or transaction of any nature with those investors. These limitations upon Vion's future

---

[2] The trial court denied Vion's motion on its counterclaim. Although Vion originally appealed that ruling, it later withdrew its appeal.

[3] See, e.g., *Lee v. Environmental Pest &c.*, 271 Ga. 371 (516 SE2d 76) (1999).

[4] See, e.g., *Firearms Training Systems v. Sharp*, 213 Ga. App. 566 (445 SE2d 538) (1994).

[5] See, e.g., *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317 (551 SE2d 735) (2001).

actions are in partial restraint of trade, and the clause must be considered as a restrictive covenant.

Swartz argues, however, that we should view the clause as more akin to those found in employment placement or real estate listing contracts that provide that the employment agency or the real estate agent will be paid if the client consummates a transaction with someone found by the agent. See, e.g., *Avanti Group (U.S.A.) v. Robert Half of Atlanta, Inc.*, 198 Ga. App. 366 (401 SE2d 576) (1991) (employment placement agency agreement); *Kenney v. Clark*, 120 Ga. App. 16 (169 SE2d 357) (1969) (exclusive real estate listing contract). But those provisions generally protect the agency's or the realtor's right to be compensated for services performed in the contemplated transaction (e.g., finding the client an employer with a suitable job opening or finding a buyer for a seller's property).

In this case, however, Swartz was compensated for the services performed in the contemplated transaction; it earned a five percent fee for finding investors for the $5 million private placement that was the subject of the Placement Agent Agreement. The noncircumvention clause does not address that compensation. Rather, it seeks to limit Vion's right to engage in future transactions with those investors, even if completely unrelated to an investment in Vion, for five years. Accordingly, we will analyze the noncircumvention clause as a restrictive covenant.

2. Next, we must determine the appropriate level of scrutiny to apply in reviewing the clause. Georgia courts apply three different levels of scrutiny to restrictive covenants depending generally upon whether the contract at issue is an employment contract, a contract for the sale of a business, or a professional partnership agreement:

> Traditionally Georgia courts divide restrictive covenants into covenants ancillary to an employment contract, which receive strict scrutiny and are not blue-penciled, and covenants ancillary to a sale of business, which receive much less scrutiny and may be blue-penciled. There is also a middle level of scrutiny applicable to covenants found in professional partnership agreements.

(Footnotes omitted.) *Northside Hosp. v. McCord*, 245 Ga. App. 245, 247 (1) (537 SE2d 697) (2000).

Of course, not every contract falls directly into one of these three categories. Nor do we believe that the type of contract should automatically determine the applicable level of scrutiny. Rather, we must look to the purposes behind the varying levels of scrutiny to deter-

mine which level is most appropriate for the contract before us. One starting point is the relative bargaining power of the parties:

> The rationale behind the distinction in analyzing covenants not to compete is that a contract of employment inherently involves parties of unequal bargaining power to the extent that the result is often a contract of adhesion. On the other hand, a contract for the sale of a business interest is far more likely to be one entered into by parties on equal footing.

(Citations omitted.) *Herndon v. Waller*, 241 Ga. App. 494, 495 (525 SE2d 159) (1999). The unequal bargaining power in the employment context is one reason covenants in employment agreements are given increased scrutiny. Id.

Another factor this Court has considered is whether there is independent consideration for the restrictive covenant itself. As noted above, for a restrictive covenant to be enforceable, it must be founded on valuable consideration. See *W. R. Grace & Co. v. Mouyal*, 262 Ga. at 465 (1). In comparing the consideration between a partnership agreement and an employment agreement, for example, this Court has noted that an employee generally receives no consideration separate from his employment for a restrictive covenant:

> [W]hen an employee agrees to subject himself to possible future restrictions, he does so in exchange for the opportunity to have the job. He really gets nothing other than the opportunity to work in exchange for giving up this aspect of his freedom. On the other hand, [in a partnership agreement] a partner has not only restricted himself, but he has also exacted from each of the other contracting parties a like restriction. . . .

(Punctuation omitted.) *Roberts v. Tifton Med. Center*, 206 Ga. App. 612, 615 (426 SE2d 188) (1992). The lack of consideration for an employee's restrictive covenant is an additional justification for subjecting employment agreements to heightened scrutiny.

In this case, there is no issue of unequal bargaining power. The parties are both corporations who employed attorneys to assist them in negotiating the Placement Agent Agreement. But there is no evidence here of valuable consideration to support the five-year noncircumvention clause itself. Although the trial court assumed without explanation that Vion received a lower commission rate, the evidence in the record is to the contrary.

The initial letter of agreement executed by the parties contemplated that Swartz would introduce Vion to institutional investors

who were qualified to participate in the company's private place-ment. Swartz also agreed to provide "assistance and consult with Vion in negotiating the terms of the securities," to prepare the necessary legal documents, and to furnish escrow services. In exchange for those services, Swartz was to receive five percent of the aggregate purchase price of the securities and an expense allowance of $75,000. Swartz also received Vion's agreement to abide by a noncircumvention provision guaranteeing that Swartz would receive a five percent fee if Vion accepted an investment from any investors introduced by Swartz, without Swartz's written permission, for a private placement within a one-year period.

The Placement Agent Agreement addresses in detail and expands the obligations of the parties. Vion, in particular, undertakes a number of obligations not listed in the letter agreement, including the five-year noncircumvention clause. Swartz's obligations in the Placement Agent Agreement relate to the same duties listed in the letter agreement, although they are described in more detail. And each party agrees to indemnify the other. Despite the additional obligations undertaken by Vion, Swartz's compensation remains the same. The agreement states that Swartz is to receive a five percent fee and a $75,000 expense allowance, as the "full amount payable to the Agent for its services, fees, and expenses in connection with" the private placement. Therefore, there is no evidence of any reduced commission, or any other consideration, to compensate Vion for its obligations under the five-year noncircumvention agreement.

This Court generally has applied the highest level of scrutiny where the parties have equal bargaining power, but where there is no consideration for the covenant at issue. See *Northside Hosp.*, 245 Ga. App. at 248-249 (3); *Herndon*, 241 Ga. App. at 495; *Johnstone v. Tom's Amusement Co.*, 228 Ga. App. 296, 300 (3) (491 SE2d 394) (1997) (physical precedent only). See also *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F2d 556 (4th Cir. 1990) (finding noncircumvention clause protecting proprietary information analo-gous to employment contract). Accordingly, under the particular circumstances surrounding the noncircumvention clause in this case, we will apply the strict level of scrutiny generally applicable to employment contracts. In making this determination, however, we express no opinion as to the level of scrutiny applicable to noncircumvention clauses under different factual circumstances.

3. In reviewing the noncircumvention clause under the strictest level of scrutiny, we must consider the clause in light of the surrounding circumstances: "Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all other circum-

stances." (Footnote omitted.) *Allied Informatics v. Yeruva*, 251 Ga. App. 404, 406 (2) (554 SE2d 550) (2001). Additionally, the Georgia courts have created a three-prong test of duration, territorial coverage, and scope of activity "as a helpful tool in examining the reasonableness of the particular factual setting to which it is applied." (Footnote omitted.) Id.

Here, the restrictive covenant seeks to prohibit further contact with six investors with whom Swartz had a standing relationship. Swartz contends that this list of investors represents hard-won professional and financial relationships and is in effect Swartz's property. In cases such as this, involving restrictions placed on contact with particular clients with whom the other party dealt, we generally need not consider territorial limitations. *Lee v. Environmental Pest &c.*, 271 Ga. 371, 373-374 (2) (516 SE2d 76) (1999); *W. R. Grace & Co.*, 262 Ga. at 467-468 (2). Rather, the reasonableness of clauses such as the one here "turns on factors of time and the nature of the business interest sought to be protected." (Punctuation omitted.) *Lee*, 271 Ga. at 374.

While Swartz has a legitimate interest in protecting its relationship with its pool of investors, the noncircumvention clause must be reasonable in light of that interest in order to be enforceable. The five-year portion of the clause prohibits Vion from entering into any agreement or transaction with the investors, whether investment related or not, without Swartz's permission. "Ordinarily, proscription of such a broad scope of competing activity renders a [restrictive covenant] void." (Citation and footnote omitted.) *Northside Hosp.*, 245 Ga. App. at 248 (2). See also *Roberts*, 206 Ga. App. at 614. Accordingly, we hold that the noncircumvention clause goes beyond what is reasonably necessary to protect Swartz's interest in its investors and is therefore unenforceable. See *Allied Informatics*, 251 Ga. App. at 406 (2); *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 322 (4) (551 SE2d 735) (2001).

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED NOVEMBER 8, 2001 — ▆▆▆▆▆▆

*Burr & Forman, Bruce H. Beerman, Ross J. Adams, Carlton M. Johnson, Jr.*, for appellant.

*Stites & Harbison, J. D. Humphries III, David S. Mohl, Paul J. Pontrelli*, for appellee.