**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2244

GENERAL ASSURANCE OF AMERICA, INC.,

Plaintiff - Appellant,

v.

OVERBY-SEAWELL COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:11-cv-00483-TSE-JFA)

Argued: May 15, 2013            Decided: July 17, 2013

Before NIEMEYER and KEENAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED**: J. Randolph Evans, MCKENNA, LONG & ALDRIDGE, LLP, Washington, D.C., for Appellant. J. Kevin Fee, MORGAN, LEWIS & BOCKIUS, LLP, Washington, D.C., for Appellee. **ON BRIEF**: Shari L. Klevens, MCKENNA, LONG & ALDRIDGE, LLP, Washington, D.C., for Appellant. Jessica M. Zetwick, Erik M. Kosa, MORGAN, LEWIS & BOCKIUS, LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff General Assurance of America (GAA) brought this action against Overby-Seawell Company (OSC), alleging breach of contract and related claims. GAA, a licensee of certain software owned by OSC, alleged that OSC breached the parties' confidentiality agreement and violated various common law and statutory duties when OSC allegedly contacted three of GAA's customers. The district court awarded summary judgment in favor of OSC on all claims. Upon our review, we affirm the district court's judgment.

Factual Background

GAA, a Virginia corporation, and OSC, a Georgia corporation, both provide "collateral tracking services" to banks. OSC owns collateral tracking software that is designed to help banks monitor the insurance status of the collateral securing their loans. In November 1999, in anticipation of entering into a business relationship, GAA and OSC entered into a confidentiality agreement.

As relevant to this case, the confidentiality agreement provided in part:

As a condition to GAA furnishing such information [regarding "GAA's clients, program design, policy forms, coverage parameters, application, etc."], OSC agrees to treat confidentially such information furnished to OSC by GAA or on GAA's behalf (the non-disclosure provision). . . .

2

It is further understood that OSC will not solicit GAA clients for CPI [collateral protection insurance] or other services once identified as clients or potential clients of GAA (the non-solicitation provision). . .

The confidentiality agreement also stated that "any documents, reports, forms or financial information, which OSC may provide to GAA or GAA to OSC, will be used for review and evaluation of the CPI or other program(s) and will be kept confidential by GAA, OSC, their employees, and representatives."

Shortly after they signed the confidentiality agreement, GAA and OSC entered into a software licensing agreement in which GAA paid various fees to use OSC's collateral tracking software. To utilize the licensed OSC software, GAA stored on OSC's database servers "every single piece of data, every certificate, [and] every master policy" related to GAA's business. Also, during the parties' decade-long relationship, OSC occasionally assisted GAA in marketing its services to potential clients by participating in GAA's sales presentations.

GAA contends that OSC violated the confidentiality agreement by generally abusing its access to GAA's business information and by "luring" three particular clients away from GAA to become clients of OSC. The first such client, Macon Bank (Macon), had a long-standing relationship with Gil Swaim, a

"sub-agent" of OSC.[1] Swaim met with Macon personnel in 2010 at Macon's office in North Carolina. During that meeting, Swaim advised Macon's assistant vice president that GAA was not providing to Macon all available collateral tracking services. In a "follow-up" email, Swaim requested a copy of Macon's contract with GAA "so that OSC could assist Macon [] in the termination of the contract with GAA." Swaim arranged a meeting with Macon representatives at OSC's offices in Georgia, which later was cancelled. Macon remains a GAA client and has not advised GAA that it intends to terminate its contract with GAA.

The second client at issue, Capital City Bank (Capital City), was contacted in 2010 by a different OSC sub-agent, Securitas Financial Services, after Capital City had become dissatisfied with GAA's collateral tracking services. Like the relationship between Macon and Swaim, Capital City and Securitas had an ongoing, longstanding association.

Securitas coordinated two meetings between OSC and Capital City regarding OSC's collateral tracking services. One of these

---

[1] The "Sub-Agent's Agreement" between Swaim and OSC stated that the parties created "a contractual relationship under which they will, from time to time utilize each other's experience, expertise, and resources in connection with the placement of Collateral Protection and related coverage for banks and other lending institutions." The agreement authorized Swaim, as sub-agent, "to solicit those insureds as may be from time to time specifically designated or agreed to by [OSC] for the placement of collateral protection insurance."

4

meetings was held at OSC's offices, and the other meeting took place at Capital City's offices in Florida. Despite these efforts, Capital City never signed a contract with OSC. Although Capital City indicated its intent to terminate its contract with GAA, the contract remained in effect at the time of the summary judgment proceedings in the district court.

In 2008, the third bank at issue, Yadkin Valley Bank (Yadkin Valley), purchased another bank that was a client of GAA. During the consolidation and transition process, Yadkin Valley invited GAA and other companies, but not OSC, to make sales presentations regarding servicing options for Yadkin Valley's loans. GAA gave a presentation to Yadkin Valley in which an OSC employee participated. Yadkin Valley later orally notified GAA that it had been selected to provide collateral tracking services for all Yadkin Valley's loans.

Shortly after making this verbal commitment to GAA, Yadkin Valley became interested in leasing the OSC software directly from OSC, rather than subleasing the software through GAA. Yadkin Valley relayed this interest to Swaim, who had been doing business with Yadkin Valley for several years, and who only later became a sub-agent of OSC. Swaim contacted OSC on behalf of Yadkin Valley, and invited OSC to give Yadkin Valley a sales presentation.

OSC made a presentation to Yadkin Valley personnel in June 2009, highlighting the differences between OSC's and GAA's services. Following this presentation, Yadkin Valley decided to hire OSC at a price slightly less than the previous contract with GAA. Yadkin Valley thereafter terminated its contract with GAA.

In May 2011, GAA filed the present lawsuit against OSC, alleging breach of the parties' confidentiality agreement, breach of fiduciary duty, tortious interference with contractual relations, and business conspiracy under Virginia statutory law. GAA also requested an accounting and the imposition of a constructive trust based on OSC's contacts with GAA clients. After hearing extensive oral argument, the district court awarded OSC summary judgment on all of GAA's claims.[2] GAA timely appealed.

---

[2] On appeal, GAA does not challenge the district court's award of summary judgment to OSC on GAA's request for an accounting and the imposition of a constructive trust. GAA maintains, however, that it has preserved a "reviv[al]" of those claims in the event that we conclude that OSC owed a fiduciary duty to GAA.

District Court Holdings

Applying well-settled principles of Georgia law,[3] the district court concluded that the non-solicitation provision of the confidentiality agreement was unenforceable because that provision was not limited in time.  See Cox v. Altus Healthcare & Hospice, Inc., 706 S.E.2d 660, 664 (Ga. Ct. App. 2011) (non-solicitation provisions in an agreement are unenforceable on their face when they do not contain a time limitation or a geographic limitation).  The district court further concluded that it could not add such a time limitation to the parties' contract.

The district court also held that the record lacked any evidence that OSC actually had solicited GAA's clients.  The court concluded that, instead, OSC merely had responded to offers of business upon contacts initiated by Yadkin Valley and Capital City themselves, and that Swaim did not reach out to Macon at OSC's direction.  With respect to the non-disclosure provision, the court explained that although the absence of a time limitation did not render the provision unenforceable per se, the record lacked any evidence that OSC had made improper disclosures of confidential information.  Accordingly, the

---

[3] The parties agree that the breach of contract claim is governed by Georgia law pursuant to the choice of law provision contained in the confidentiality agreement.

district court awarded summary judgment to OSC on the breach of contract claim.

The district court next addressed GAA's claims of tortious interference with contract, breach of fiduciary duty, and conspiracy under the Virginia business conspiracy statutes. The district court began its analysis by rejecting GAA's contention that its tort claims were governed by Virginia law. Applying Virginia's choice of law rules, the district court reasoned that the law of the states in which OSC's allegedly wrongful conduct occurred governed those claims. Accordingly, the district court held that the different tort claims were subject to the law of the respective states in which GAA's clients were located.

The district court ultimately concluded that GAA had failed to establish that OSC had a fiduciary relationship with GAA and, therefore, that OSC's alleged misconduct could not support a claim for breach of fiduciary duty. Regarding the tortious interference claim, the district court held that OSC did not induce the termination of GAA's contract with Macon, which still remains a GAA client. The court also concluded that OSC had not wrongfully interfered with GAA's contract with Yadkin Valley, because OSC's contacts with Yadkin Valley were "reasonably related to a legitimate business interest," and the evidence failed to show that OSC acted maliciously or without justification. The court similarly rejected the tortious

8

interference claim regarding Capital City, stating that the "record is devoid of evidence that OSC employed improper methods in its interactions with Capital City."

Finally, relying on the constitutional principle that states may not regulate commerce occurring entirely outside their borders, the district court concluded that GAA's claim of a statutory business conspiracy under Virginia Code §§ 18.2-499 & -500 failed as a matter of law, because none of the allegedly conspiratorial acts occurred in Virginia. The district court accordingly awarded summary judgment to OSC on the business conspiracy claim.

## Issues on Appeal

We review de novo the district court's award of summary judgment. Hardwick v. Heyward, 711 F.3d 426, 433 (4th Cir. 2013). Upon our consideration of the record, the briefs, and the parties' oral argument, we affirm the district court's judgment. In reaching this result, we agree substantially with the district court's reasoning set forth in its thorough opinion, and disagree only with respect to the court's choice of law analysis regarding the tortious interference with contract and breach of fiduciary duty claims. Additionally, we decide GAA's business conspiracy claim on a different basis than the one chosen by the district court.

## Contract Claims

In rejecting GAA's breach of contract claims, the district court, as required by Georgia law, correctly applied the principle of strict scrutiny to the non-solicitation and non-disclosure provisions of the confidentiality agreement. Applying such strict scrutiny, we likewise hold that the non-solicitation provision is unenforceable because it lacks any time limitation, and a court is not permitted to read into a document such a critical term that is plainly absent. See Ga. Code Ann. § 13-2-2 (parol evidence rule under Georgia law); Northside Hosp., Inc. v. McCord, 537 S.E.2d 697, 699 (Ga. Ct. App. 2000) (restrictive covenants subject to strict scrutiny may not be "blue penciled").

We also agree with the district court that the record lacks any evidence that OSC breached either the non-solicitation provision or the non-disclosure provision of the confidentiality agreement. GAA's president and corporate designee could not identify in his deposition testimony any confidential information that OSC allegedly had disclosed. GAA's unsupported speculation that such information "must have been disclosed" is insufficient to create a genuine dispute of material fact to prevent the entry of summary judgment. See Othentec Ltd. v. Phelan, 526 F.3d 135, 142 (4th Cir. 2008).

10

## Virginia Business Conspiracy Claim

To establish a civil conspiracy under Virginia Code §§ 18.2-499 & -500, a plaintiff must prove by clear and convincing evidence that the defendant acted "for the purpose of [] willfully and maliciously injuring another" in his business, that is, "the defendant[] acted intentionally, purposefully, and without lawful justification, and [] such actions injured the plaintiff's business." Id. § 18.2-499; N. Va. Real Estate, Inc. v. Martins, 720 S.E.2d 121, 133 (Va. 2012) (citation omitted). In support of its business conspiracy claim, GAA asserts that it presented sufficient evidence to establish OSC's willful and malicious motive to injure GAA in its business. We disagree.

The evidence on which GAA relies consists of deposition testimony given by GAA's president, which simply repeated a statement made to him by a former OSC employee, who in turn was repeating a statement allegedly made by OSC's president at an OSC company meeting. In that statement, the OSC president allegedly indicated that he intended to "go out, take [GAA's] business and put [GAA] out of business." Plainly, as the district court concluded, this evidence was inadmissible hearsay. The balance of the record fails to establish that OSC acted with malice and intended to injure GAA's business, but merely shows that OSC acted to promote its legitimate business interests. Thus, OSC's permissible motivation for its actions,

11

standing alone, negates GAA's business conspiracy claim.[4]  Va. Code Ann. § 18.2-499 (a conspiracy requires that the defendant acted for "the purpose of [] willfully and maliciously injuring another") (emphasis added); see also Advanced Marine Enters. v. PRC, Inc., 501 S.E.2d 148, 154-55 (Va. 1998) (the conspiracy statutes do not require that the defendant's "primary and overriding purpose is to injure another," but rather that the defendant acted with "legal malice").  Given this lack of evidence of improper motive, we conclude that the district court did not err in awarding summary judgment to OSC on the business conspiracy claim.

Other Tort Claims

We turn to consider GAA's remaining claims of tortious interference with contract and breach of fiduciary duty. Although we affirm the district court's award of summary judgment to OSC on these claims, we first clarify the choice of law analysis applicable to the resolution of the claims.

We apply the choice of law rules of Virginia, the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496

---

[4] Because the record wholly fails to support a business conspiracy claim under the Virginia statutes, we need not address GAA's argument that the district court erred in declining to apply the Virginia statutes to the out-of-state conduct at issue in this case.

12

(1941).  Based on these choice of law principles, we apply to tort actions the law of the place where the wrong occurred. Milton v. IIT Research Inst., 138 F.3d 519, 521 (4th Cir. 1998). Under Virginia law, the "place of the wrong" is the place where "the last event necessary to make an [actor] liable for an alleged tort takes place."  Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986) (citation omitted).  For claims of tortious interference with contract and breach of fiduciary duty, the occurrence of the plaintiff's injury marks the last event necessary to establish liability.  See Collelo v. Geographic Servs. Inc., 727 S.E.2d 55, 62-63 (Va. 2012) (citation omitted) (explaining elements of tortious interference with contract claim); Carstensen v. Chrisland Corp., 442 S.E.2d 660, 666 (Va. 1994) (breach of fiduciary duty requires proof of "duty, breach, and resulting damage").

With regard to GAA's claims of tortious interference and breach of fiduciary duty involving OSC's contacts with Yadkin Valley, we conclude that GAA's alleged injury occurred in North Carolina, the place where Yadkin Valley terminated its contract with GAA, which was the last event necessary to render OSC liable for the alleged torts.  In reaching this conclusion, we reject GAA's contention that Virginia, rather than North Carolina, was the place of GAA's alleged injury in the Yadkin Valley matter.  Virginia was merely the place where GAA

13

ultimately suffered its financial losses, not the location where the last event necessary to render OSC liable took place. We will not apply the law of a state in which only the effect of the wrongful act, such as economic impact, is felt. Milton, 138 F.3d at 522.

Rather than focusing on the location of the last event necessary to establish liability on the part of OSC, the district court instead made its choice of law determination based on the location of "the alleged harmful contact between OSC and GAA's clients." Regardless of this misplaced focus, however, the district court's ultimate application of the law of North Carolina to the claims involving Yadkin Valley was correct, because that was the location where the last event necessary to establish liability occurred. Quillen, 789 F.2d at 1044.

We also hold that we need not decide what state's law applies to the tort claims involving Capital City and Macon, because those claims cannot stand irrespective of the choice of law. Even assuming that GAA adequately pleaded tortious interference claims involving Capital City and Macon, those claims fail as a matter of law. GAA did not prove that OSC caused a termination of GAA's relationships with these two banks, which is a required element of the cause of action. See Collelo, 727 S.E.2d at 62-63. The record before us is

14

undisputed that neither bank ever executed a contract with OSC, and both remain clients of GAA.

Next, we conclude that despite GAA's contentions to the contrary, the claim of tortious interference involving Yadkin Valley and all the claims of breach of fiduciary duty are merely re-packaged versions of GAA's claim for breach of the confidentiality agreement, which we already have concluded is without merit. The tortious interference claim involving Yadkin Valley fails as a matter of law because the record is devoid of evidence that OSC "acted with malice and for a reason not reasonably related to the protection of [its] legitimate business interest." Cameron v. New Hanover Mem'l Hosp., Inc., 293 S.E.2d 901, 916 (N.C. Ct. App. 1982) (citation omitted).

The record before us likewise fails to establish that OSC owed a fiduciary duty to GAA. The record shows that GAA and OSC entered into an arms-length business agreement, under which all of OSC's obligations to GAA were based. Thus, under either the state law applied by the district court, or under Virginia law as advocated by GAA, OSC did not owe a fiduciary duty to GAA. See Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A., 730 S.E.2d 763, 767 (N.C. Ct. App. 2012) ("North Carolina courts generally find that parties who interact at arms-length do not have a fiduciary relationship with each other, even if they are mutually interdependent businesses.") (citation omitted); Taylor

15

Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So.2d 536, 541 (Fla. Dist. Ct. App. 2003) ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other."); Augusta Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 293-95 (Va. 2007) (explaining that no claim for breach of fiduciary duty arises when the defendant's only obligations derive from a contractual relationship between the parties). For these reasons, we hold that the district court properly awarded summary judgment to OSC on all the claims of tortious interference with contract and breach of fiduciary duty.

## Conclusion

In sum, we hold that the district court did not err in awarding summary judgment in favor of OSC on all of GAA's claims. We therefore affirm the district court's judgment.

AFFIRMED