## A97A0386. GIBSON v. GAINESVILLE BANK & TRUST.
(487 SE2d 460)

McMURRAY, Presiding Judge.

James L. Gibson filed this appeal after the trial court granted summary judgment in favor of Gainesville Bank & Trust ("the Bank") based upon undisputed proof that Gibson executed a $237,000 "renewal" note in favor of the Bank but did not pay this debt when it came due. We affirm because Gibson's proof that the Bank offered to compromise the loan before "accelerating its note" does not raise genuine issues of material fact as to whether there was a mutual departure from the "renewal" note so as to constitute a quasi-new agreement between the parties.

---

On November 10, 1994, Gibson executed a $237,000 "renewal" note in favor of the Bank and granted the Bank security interests in certain realty and three mobile homes. When Gibson "defaulted in his obligation to make monthly payments on the Note . . . and failed to pay the amount due at maturity," the Bank sold the collateral realty for less than Gibson's debt and applied to have the nonjudicial foreclosure sale confirmed pursuant to OCGA § 44-14-161. After the superior court confirmed the nonjudicial foreclosure sale, the Bank filed a deficiency judgment action against Gibson and moved for summary judgment based on undisputed proof that Gibson "defaulted in his obligation to make monthly payments on the Note . . . and failed to pay the amount due at maturity." Gibson filed his affidavit in response and deposed, in pertinent part, as follows:

"Prior to [the Bank] accelerating its note, I had discussions with a prospective purchaser wherein it was orally agreed that a contract would be drawn up for $172,000.00 (without mobile homes) to purchase the property which is the subject matter of the above litigation with [the bank]. Deponent further states that at the time of the negotiations, [the Bank] indicated that they would accept $172,000.00 in full settlement, which was a cash offer less than the amount owed on the note[,] in full satisfaction of my obligations. . . . Prior to the foreclosure advertisement, I contacted [the Bank] and talked to Wilson Livingston, and advised him that I was selling certain mobile homes that were collateral of [the Bank], which funds would be remitted to the bank. At this time, I was led to believe by Wilson Livingston that the foreclosure would be delayed, and I [would] be given thirty (30) days to sell the land and mobile homes to raise the $172,000.00. . . . Contrary to the agreement, the foreclosure advertisements began in May of 1995. I had a verbal offer to purchase of $172,000.00 from Buddy Ralston, but upon the advertisement beginning in the newspaper in May of 1995, he withdrew his offer, stating that he could buy it cheaper at the Courthouse steps. . . . My defense is . . . that I was led to believe that my efforts to sell the land and the mobile homes, and application of those funds to the debt would not only postpone the foreclosure, but created a new agreement for a set pay off of $172,000.00, and of this amount $169,800.00 has been paid [via sale of the collateral realty and mobile homes]. Based upon my understanding of the new agreement, I paid $13,000.00 to the Bank for the mobile homes after the foreclosure. The Bank has not given me credit for this payment." *Held*:

Gibson contends summary judgment was improper because his sworn statement regarding the Bank's agreement to compromise his debt before "accelerating its note" raises genuine issues of material fact as to whether there was a mutual departure from the promissory note so as to constitute a quasi-new agreement between the parties.

See OCGA § 13-4-4. This argument is without merit.

While a quasi-new agreement may arise where the parties mutually depart from the terms of an executory contract, to support such a departure there must be some evidence that money was paid or received under such departure. OCGA § 13-4-4. See *Vaughn & Co., Ltd. v. Saul*, 143 Ga. App. 74, 82 (7), 83 (237 SE2d 622). In the case sub judice, the only proof Gibson offers that the Bank accepted money under the parties' alleged quasi-new agreement is his sworn statement that, "[b]ased upon my understanding of the new agreement, I paid $13,000.00 to the Bank for the mobile homes after the foreclosure." It is undisputed, however, that Gibson already pledged these mobile homes as collateral for the "renewal" note. Thus, the Bank's alleged receipt of this $13,000 merely proves that the Bank received what it was already due under the unambiguous terms of the "renewal" note. Such proof would not authorize a finding that the Bank compromised its right to collect the full amount due under the "renewal" note in lieu of a quasi-new loan agreement with Gibson. *Crawford v. First Nat. Bank of Rome*, 137 Ga. App. 294, 297 (223 SE2d 488). Since it is undisputed that the "renewal" note was due and not paid by Gibson on demand, the trial court did not err in granting partial summary judgment in favor of the Bank as to liability. *Auerbach v. First Nat. Bank of Atlanta*, 147 Ga. App. 288, 289 (1) (248 SE2d 551).

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED JUNE 4, 1997.

Before Judge Fuller.

*Harmon T. Smith, Jr.*, for appellant.

*Hulsey, Oliver & Mahar, Joseph D. Cooley III, Abbott S. Hayes, Jr.*, for appellee.