### A09A0867. ONBRAND MEDIA et al. v. CODEX CONSULTING, INC. et al.
(687 SE2d 168)

DOYLE, Judge.

OnBrand Media, Inc., and Lisa Jones began negotiations with Codex Consulting, Inc., and Open Systems, Inc. ("OSI"), to form a joint venture agreement for the development of a software program that they would market to a specific company. After the negotiations were ultimately unsuccessful, OnBrand and Jones filed suit against Codex and OSI, alleging multiple claims, including, inter alia, breach of contractual duty of good faith and fair dealing and breach of confidentiality. OnBrand and Jones appeal the grant of summary

---

judgment to Codex and OSI. Finding no error, we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that

> there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that OSI provides technology services and software development to various companies, including Aflac Insurance, with whom it had entered into a Master Services Agreement for certain programming services. Jones, through her company, OnBrand, developed and produced a multimedia e-mail software program called "EyeMail." Jones introduced EyeMail to OSI in 2005, describing it as a marketing tool for sending out e-mail messages with embedded audio, video, animated graphics, and flash applications to a list of recipients. OSI, OnBrand, and Jones then approached Aflac, pitching EyeMail as a tool for promoting Aflac insurance products to its suppliers. Although Aflac initially declined, it ultimately expressed an interest in using EyeMail as a sales tool for its sales force and requested a working prototype by January 2007.

In 2005 and 2006, the parties discussed forming a joint venture to pursue the EyeMail project with Aflac, and Jones proposed a specific joint venture agreement in November 2006. The parties, however, never signed such an agreement. During the negotiations, OSI realized that the EyeMail program would require a separate "portal" or web-based interface, and OSI approached Codex Consulting, which agreed to develop the portal in exchange for a share of the ultimate EyeMail subscription revenues. Before OnBrand and Jones would agree to disclose technical details regarding EyeMail, which Codex needed to understand in order to design the portal, they insisted that Codex and OSI sign nondisclosure agreements with OnBrand. Thus, Codex and OSI executed separate documents with OnBrand entitled "Information Exchange/Non[-]Disclosure Agreements" ("NDAs") in October 2006.

In December 2006, Jones sent Codex an e-mail with the subject line, "EyeMail Code — Aflac Men in Sauna," to which she attached three pages of HTML script with the title, "OnBrand Media's Code behind Aflac Men in Sauna EyeMail." Codex and OSI ultimately

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

concluded that there was no software application behind EyeMail and nothing contained therein could interface with a web portal, and thus, the program was not a feasible product to sell to Aflac. Thereafter, Codex and OSI developed a separate web portal and a software program called "RightMail" for creating and sending e-mail messages.[2]

Although Codex and OSI continued business negotiations with OnBrand, hoping that Jones and her company could assist in selling the RightMail program to Aflac, the negotiations ultimately ended after OnBrand and Jones threatened legal action when Codex and OSI refused to call the program EyeMail.

OnBrand and Jones filed suit against Codex and OSI in June 2007, alleging claims for breach of contractual duty of good faith and fair dealing, misappropriation of trade secrets, deceptive trade practices, fraud and deceit, tortious interference with a business opportunity, intentional infliction of emotional distress, violation of the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"), and breach of confidentiality. Codex and OSI filed a motion for summary judgment, which the trial court granted, and this appeal followed.

1. OnBrand and Jones argue that "[t]he trial court failed to apply the appropriate standard at the summary judgment stage. The court reviewed the facts in the light most favorable to the moving party." This enumeration presents no basis for reversal.

On the first page of its order granting summary judgment to Codex and OSI, the trial court specifically noted that it viewed the facts in "the light most favorable to the non-moving party," quoting *Hannah v. Hampton Auto Parts*.[3] Thus, it is clear from the language of the order that the trial court was aware of the proper standard of review.

OnBrand and Jones apparently contend, however, that the trial court failed to actually apply this standard and, instead, viewed the facts in the light favorable to Codex and OSI. In support of this enumeration, OnBrand and Jones list 12 instances where the trial court allegedly failed to view the facts in the proper light.

Assuming, without deciding, that the record citations provided by OnBrand and Jones support their assertion that the trial court viewed the facts in the improper light, they have not shown — in their argument in support of this specific enumeration[4] — how such facts are material. For example, OnBrand and Jones argue that the

---

[2] There is no evidence that Codex or OSI ever sold the RightMail product to Aflac.

[3] 234 Ga. App. 392 (506 SE2d 910) (1998).

[4] To the extent that OnBrand and Jones discuss the materiality of the purportedly disputed facts in the remaining portions of their brief, we address each claim individually in Division 2.

trial court's "characterization of Appellants' product as 'the idea was, and remains the brainchild of Ms. Jones' is a conclusion reached not based on any facts presented. Appellant Jones ran a company that produced multimedia e[-]mails prior to Appellees and Appellants ever having met." OnBrand and Jones make no attempt to explain how that characterization, or any of the other allegedly misconstrued facts, are material to their claims or how the trial court's purported mischaracterization of the EyeMail product impacted its ruling granting summary judgment to the Defendants.

"Summary judgment is proper when no genuine issue of material fact remains."[5] And factual disputes regarding immaterial issues do not preclude summary judgment.[6] Thus, this enumeration provides no basis for reversal.

2. OnBrand and Jones contend that the trial court erred in granting summary judgment to Codex and OSI on each of their claims. We address each of the claims individually.

(a) *Noncompete Agreements.* In its final order, the trial court analyzed the noncompete provisions[7] in the NDAs as restrictive covenants subject to the middle level of scrutiny applicable to professional partnership agreements, concluding that the noncompete provisions were unenforceable because they contained no territorial limits or limits on the scope of the restricted activity. We discern no error.

The NDAs provided, in relevant part:

A. The parties acknowledge that it may be necessary for each of them, as Discloser, to provide to the other, as Recipient, certain Information, including trade secret information, considered to be [c]onfidential, valuable[,] and proprietary by Discloser, for the purpose of evaluating a potential business relationship, in support of OnBrand Media's EyeMail Product Line. . . .[8]

C. The parties acknowledge[ ] and agree[ ] that the Services and OnBrand Media logos and trade names are the property of OnBrand Media or its affiliates or suppliers. *This consideration is not granting any right or license to use*, link to,

---

[5] *MEA Family Investments v. Adams*, 284 Ga. 407, 410 (667 SE2d 609) (2008).

[6] See id.

[7] We note that Codex and OSI deny that they ever signed contracts containing the noncompete clause, alleging that OnBrand and Jones "surreptitiously added" the noncompete clause to the signed documents. On appeal, viewing the evidence in the light most favorable to the Plaintiffs, however, we have assumed that the Defendants signed contracts containing the noncompete clause.

[8] The NDAs also provide that "[t]he terms 'Recipient' and 'Discloser' refer to either OnBrand Media or [Codex or OSI,] as the case may be."

reproduc[e], reverse engineer, modify, duplicate, distribute, *compete*, display[,] or perform *any such copyrighted materials used or displayed on Company [w]ebsite* or to permit others to do the same, and *that all such uses are prohibited without the prior written consent of OnBrand Media.* The User understands that OnBrand Media Services and its website also contain or may contain copyrighted or other proprietary materials of OnBrand Media, its sponsors, advertisers[,] or other third parties. *The User is not granted any right or license to use*, link to, reproduce, reverse engineer, modify, duplicate, distribute, display[,] or *compete with OnBrand Media products and services, and that all such uses are prohibited without prior written consent of OnBrand Media.*[9]

(i) Covenants not to compete that are deemed to be an impermissible restraint of trade are unenforceable.[10] However, "a restrictive covenant . . . will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, and is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public."[11]

> Restrictive covenants ancillary to the sale of a business traditionally have been afforded a substantial degree of protection by the Georgia courts and are viewed with the least degree of scrutiny. Conversely, covenants not to compete which are part of an employment contract receive close scrutiny to ensure that they are strictly limited in duration, territory, and prohibited activities. In between these two standards of review is the middle level of scrutiny, which is generally applied to restrictive covenants ancillary to professional partnership agreements.[12]

The type of contract under consideration does not alone dictate the appropriate level of scrutiny, however.[13]

[N]ot every contract falls directly into one of these three

---

[9] (Emphasis supplied.)

[10] See OCGA § 13-8-2 (a) (2); *West Coast Cambridge v. Rice*, 262 Ga. App. 106, 108 (1) (584 SE2d 696) (2003).

[11] (Punctuation omitted.) *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992), quoting *Rakestraw v. Lanier*, 104 Ga. 188, 194 (30 SE 735) (1898).

[12] (Punctuation and footnotes omitted.) *West Coast Cambridge*, 262 Ga. App. at 108 (1).

[13] See id.; *Swartz Investments v. Vion Pharmaceuticals*, 252 Ga. App. 365, 368-369 (2) (556 SE2d 460) (2001).

categories. Nor do we believe that the type of contract should automatically determine the applicable level of scrutiny. Rather, we must look to the purposes behind the varying levels of scrutiny to determine which level is most appropriate for the contract before us. One starting point is the relative bargaining power of the parties. . . .[14]

Here, although the parties did not ultimately enter into a joint venture agreement, that was their intention when they began negotiations. Importantly, the NDAs contained language acknowledging that both parties might be either a "discloser" or a "recipient," and the NDAs restricted the use, distribution, or disclosure of certain information by both parties to each agreement. And there is no allegation that the parties to the agreements had unequal bargaining positions. Therefore, we conclude that the NDAs are akin to those contained in a professional partnership agreement,[15] and thus, the trial court did not err in applying the middle level of scrutiny to the noncompete provisions of the agreements.[16]

(ii) The trial court properly concluded that the covenants not to compete contained within the NDAs, which are subject to the middle level of scrutiny, are unenforceably overbroad. "The reasonableness of a restrictive covenant is determined by examining its duration, territorial coverage, and scope of prohibited activity. This tripartite test is not applied arbitrarily, but as a helpful tool in examining the reasonableness of the underlying factual setting."[17] Here, because the NDAs contain no specific territorial limits nor any clear limits on the scope of the prohibited activity, they are unenforceable.[18]

(b) *Breach of Confidentiality Provisions.* OnBrand and Jones alleged that Codex and OSI breached the confidentiality provisions in the NDAs, which prohibit a party recipient from disclosing, using, or distributing information specifically designated as confidential by

---

[14] *Swartz Investments*, 252 Ga. App. at 368-369 (2).

[15] See *Atlanta Bread Co. Intl. v. Lupton-Smith*, 285 Ga. 587, 589 (2) (679 SE2d 722) (2009) (clause in a contract that prohibits one party "from engaging in a certain type of business during the term of the parties' agreement . . . is a partial restraint of trade designed to lessen competition[; s]uch restraints, no matter the nomenclature assigned to them, are disfavored in this state as a matter of public policy").

[16] See *Physician Specialists &c. v. MacNeill*, 246 Ga. App. 398, 402 (2) (a) (539 SE2d 216) (2000); *Rash v. Toccoa Clinic Med. Assoc.*, 253 Ga. 322, 326 (2) (320 SE2d 170) (1984).

[17] (Punctuation and footnote omitted.) *Physician Specialists*, 246 Ga. App. at 403-404 (2) (b).

[18] See *Fellows v. All Star, Inc.*, 272 Ga. App. 262, 265-266 (2) (612 SE2d 86) (2005); *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*, 253 Ga. App. 681, 686 (1) (b) (560 SE2d 268) (2002); *Physician Specialists*, 246 Ga. App. at 403-404 (2) (b); *Northside Hosp. v. McCord*, 245 Ga. App. 245, 248 (2) (537 SE2d 697) (2000).

the other party except as permitted in the agreement.[19] The trial court concluded that "there exists no evidence in the record that the Defendants ever disclosed [Jones's] HTML script to any other party. Without such proof, a claim for disclosure of the protected information cannot stand."

On appeal, OnBrand and Jones argue that the trial court erred in concluding that "the only item marked as confidential is an HTML script and thus is all that is covered by the [NDA]." They do not, however, provide any citation to the record to demonstrate that Codex and OSI disclosed *any* information protected by the NDA. Simply put, the Plaintiffs' sole claim is that Codex and OSI took their idea. Assuming, without so finding, that the Defendants did so, OnBrand and Jones have not demonstrated that such action was prohibited by the NDAs. In the absence of such proof, the trial court properly granted summary judgment to the Defendants on this claim.

(c) *Breach of Duty of Good Faith and Fair Dealing.* OnBrand and Jones claim that the Defendants breached an implied contractual duty of good faith and fair dealing by signing the NDAs and then using protected information "to duplicate [the Plaintiffs'] products." The trial court granted summary judgment on this claim, on the ground that "[t]here exists . . . no independent cause of action for breach of good faith and fair dealing outside of a claim for breach of contract," citing *Morrell v. Wellstar Health System.*[20]

> Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability.[21]

Therefore, to prevail on their claim for breach of the duty of good faith and fair dealing, OnBrand and Jones must establish that Codex and OSI owed a contractual obligation.[22] As the only agreements between the parties, the NDAs must therefore contain such an obligation for this claim to survive. And to prevail on their claim for

---

[19] Under the NDAs, the parties are permitted to use such information "in connection with the Project and for no other purpose."

[20] 280 Ga. App. 1, 5 (2) (633 SE2d 68) (2006).

[21] (Citations omitted.) *Myung Sung Presbyterian Church v. North American Assn. &c.,* 291 Ga. App. 808, 810 (2) (662 SE2d 745) (2008). See also *Stuart Enterprises Intl. v. Peykan, Inc.,* 252 Ga. App. 231, 234 (2) (555 SE2d 881) (2001).

[22] See *WirelessMD, Inc. v. Healthcare.com Corp.,* 271 Ga. App. 461, 468-469 (2) (610 SE2d 352) (2005).

148

breach of an implied duty of good faith and fair dealing, OnBrand and Jones must demonstrate that the Defendants somehow violated such an implied duty. They have not met this burden. It follows that the trial court properly granted summary judgment to the Defendants on this claim.

(d) *Misappropriation of Trade Secrets*. OnBrand and Jones claim that Codex and OSI misappropriated the "details" of their "product and company."

Georgia law defines "trade secret" as

> information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information: (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[23]

"Misappropriation" is the

> (A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) Disclosure or use of a trade secret of another without express or implied consent by a person who: (i) Used improper means to acquire knowledge of a trade secret; (ii) At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was: (I) Derived from or through a person who had utilized improper means to acquire it; (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) Before a material change of position, knew or had reason to know that it was

---

[23] OCGA § 10-1-761 (4).

a trade secret and that knowledge of it had been acquired by accident or mistake.[24]

Here, OnBrand and Jones have failed to demonstrate that Codex and OSI acquired a trade secret, as defined in the Code, by improper means.[25] Even assuming that the Defendants did have knowledge of the Plaintiffs' trade secrets, there is no evidence that any such information was obtained in any way other than by voluntary disclosure by the Plaintiffs. Thus, the trial court properly granted summary judgment on this claim.[26]

(e) *Fraud and Deceit.* OnBrand and Jones allege that Codex and OSI committed fraud by (1) making false misrepresentations that they would abide by the NDAs; (2) signing the NDAs when they knew they would not abide by them; and (3) signing the NDAs with the intention of inducing the Plaintiffs to disclose their EyeMail product technology.

To prevail on a claim of fraud, a party must prove:

(1) that the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made.[27]

Here, OnBrand and Jones have failed to demonstrate that Codex or OSI entered into the NDAs with no intention of abiding by them or that they did do so in an attempt to get the Plaintiffs to disclose their EyeMail technology with the intention of using it for their own purposes. OnBrand and Jones have also failed to establish that they were damaged by the alleged fraud.[28] Thus, the trial court properly granted summary judgment on this claim.

(f) *Tortious Interference.* OnBrand and Jones allege that Codex

---

[24] OCGA § 10-1-761 (2).

[25] See id.; cf. *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 349 (2) (392 SE2d 860) (1990) (wrongful means include fraud, misrepresentation, defamation, physical violence, use of confidential information, unwarranted criminal prosecutions, and abusive civil suits); *Tom's Amusement Co. v. Total Vending Svcs.*, 243 Ga. App. 294, 296 (2) (a), n. 8 (533 SE2d 413) (2000).

[26] See OCGA § 10-1-761 (2).

[27] (Punctuation omitted.) *Parrish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 647-648 (2) (629 SE2d 468) (2006).

[28] The Plaintiffs' sole evidence of harm is a copy of a presentation by Codex and OSI to Aflac regarding RightMail, which is simply insufficient to establish harm to OnBrand and Jones.

and OSI tortiously interfered with a business opportunity, contending that they were "induced to utilize Defendants and [were] damaged . . . by Defendant OSI profits and having [their] product exploited for Defendants' gain." Although OnBrand and Jones do not specify the lost business opportunities in their complaint, they allege in their appellate brief that the Defendants tortiously interfered with their relationships with Aflac, Wachovia, Spherion, and Primerica.

To prevail on a claim of tortious interference with business relations, a plaintiff must prove the following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or a third party to discontinue or fail to enter into an anticipated relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.[29]

Additionally,

> [t]o be liable for interference with contractual or business relations, one must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. In other words, all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships.[30]

Here, the tortious interference claim involving Aflac fails because Codex and OSI are not strangers to the relationship between the Plaintiffs and Aflac.[31] The Plaintiffs' claims involving tortious interference with business relations with Wachovia, Spherion, and Primerica fail as well. To prevail on these claims, OnBrand and Jones were "required to demonstrate that absent the interference [by Codex and OSI], those relations were reasonably likely to develop in fact."[32] To support these claims, the Plaintiffs cite to two affidavits. In the first one, a representative from Primerica states that "[a]fter

---

[29] (Punctuation omitted.) *Continental Maritime Svcs. v. Maritime Bureau*, 275 Ga. App. 533, 535-536 (2) (621 SE2d 775) (2005).

[30] (Punctuation omitted.) *Carey Station Village Home Owners Assn. v. Carey Station Village*, 268 Ga. App. 461, 463 (1) (602 SE2d 233) (2004).

[31] See id.; *Galardi v. Steele-Inman*, 266 Ga. App. 515, 521 (3) (597 SE2d 571) (2004).

[32] *Galardi*, 266 Ga. App. at 522 (3).

finding that RightMail was the same product as EyeMail, which [he] had been introduced to and viewed a year earlier, [he] no longer pursued helping Open Systems with RightMail within Primerica." In the second affidavit, a manager with Wachovia similarly states that after Jones pitched the EyeMail product to him, he met with OSI, who pitched RightMail, a similar product, and that he thereafter canceled all communication with OSI because the two systems were very similar.[33] Thus, although there is evidence that the affiants' concerns regarding the similarities between EyeMail and RightMail caused them to forego any further relationship with *OSI*, OnBrand and Jones have pointed to no evidence that demonstrates that *they* were likely to form business relationships with Wachovia, Primerica, or Spherion. Thus, the Plaintiffs cannot prevail on their claims for tortious interference with these entities.

(g) *Claims Based on Violations of the Georgia UDTPA.* OnBrand and Jones allege that Codex and OSI violated UDTPA, OCGA § 10-1-370 et seq., "[b]y using names such as 'RightMail' and engaging in the business of e-mail enhancement subsequent to being exposed to Plaintiffs' product and trade name," and that the Defendants' "acts have caused confusion and misunderstanding of Defendants['] purported approval to use, market[,] or render service in the e-mail market."

Under the UDTPA, which provides for relief for a victim of trademark or trade name infringement, a party engages in deceptive trade practices when it

(1) Passes off goods or services as those of another; (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; . . . or (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.[34]

Here, OnBrand and Jones have failed to show that Codex's and OSI's conduct caused any likelihood of confusion or misunderstanding as to the source of the program. The two affidavits provided by Wachovia and Primerica representatives clearly state that OSI pitched them the RightMail product and that they each recognized

---

[33] OnBrand and Jones do not refer to any specific evidence regarding a potential business relationship with Spherion.

[34] OCGA § 10-1-372 (a).

that it was similar to the EyeMail product pitched by Jones. Neither affiant suggested that OSI pitched the product in a manner that would have led them to believe that OSI was attempting to sell them EyeMail or that OSI even mentioned EyeMail during its demonstration. Under these circumstances, the trial court did not err in granting summary judgment to the Defendants on the Plaintiffs' claims under the UDTPA.[35]

(h) *Intentional Infliction of Emotional Distress.* Jones argues that the actions of Codex and OSI have caused her severe emotional distress and that the trial court erred in granting summary judgment to the Defendants on this claim. In their brief on appeal, OnBrand and Jones simply allege that the trial court failed to "delineate what actions of the [Defendants] were examined [ ]or what factors it viewed in a light most favorable to the [Plaintiffs]," without citing to any evidence whatsoever to support their claim for intentional infliction of emotional distress. This is simply insufficient.

To prevail on a claim for intentional infliction of emotional distress, Jones must establish that (1) the Defendants' conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and Jones's emotional distress; and (4) the emotional distress was severe.[36] "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law."[37]

Jones failed to prove that Codex or OSI engaged in extreme or outrageous conduct, or that she suffered severe emotional distress as a result of their conduct. To meet the extreme and outrageous test, a defendant's conduct "must be so extreme as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[38] Further, "[t]he conduct must inflict emotional distress so severe that no reasonable person could be expected to endure it."[39] Given the absence of such evidence here, the trial court did not err in granting summary judgment to the Defendants on this claim.[40]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

[35] See *Looney v. M-Squared, Inc.*, 262 Ga. App. 499, 506 (8) (586 SE2d 44) (2003).

[36] See *MARTA v. Mosley*, 280 Ga. App. 486, 490-491 (3) (634 SE2d 466) (2006).

[37] *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991).

[38] (Punctuation omitted.) *Discovery Point Franchising v. Miller*, 234 Ga. App. 68, 73 (4) (505 SE2d 822) (1998).

[39] (Punctuation omitted.) *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584 (657 SE2d 644) (2008).

[40] See id.; see also *Peoples v. Guthrie*, 199 Ga. App. 119, 121 (2) (404 SE2d 442) (1991).

DECIDED NOVEMBER 19, 2009.

*Lassiter & York, Levi Breedlove*, for appellants.

*Weatherly, Kerven & Seigel, Mitchell G. Weatherly, Mark L. Seigel*, for appellees.