**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 22, 2016**

# In the Court of Appeals of Georgia

A15A2067. MBIGI v. WELLS FARGO HOME MORTGAGE.

ELLINGTON, Presiding Judge.

Lovemore Mbigi sued Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N. A. ("Wells Fargo") after Wells Fargo sold his home in a foreclosure sale. In his complaint, as amended, Mbigi asserted claims against Wells Fargo for wrongful foreclosure, violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"),[1] fraudulent and/or negligent misrepresentation, intentional infliction of emotional distress, punitive damages, breach of duty of good faith and fair dealing, and promissory estoppel. The trial court granted Wells Fargo's motion to dismiss Mbigi's complaint for failure to state a claim. See OCGA § 9-11-12 (b) (6). On

---

[1] See OCGA § 16-14-1 et seq.

appeal, Mbigi contends that the trial court erred in dismissing his claims. We affirm in part and reverse in part for the reasons set forth below.

A motion to dismiss for failure to state a claim should not be granted unless:

(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation and punctuation omitted.) *Stendahl v. Cobb County*, 284 Ga. 525 (1) (668 SE2d 723) (2008). In other words, "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." (Citation and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014). On appeal, this Court "review[s] de novo a trial court's determination that a pleading fails to state a claim upon which relief can be granted, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted.) *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750 (751 SE2d 545) (2013).

2

In his complaint, Mbigi alleges that, in 2007, he executed a security deed in favor of Wells Fargo's predecessor[2] to secure a loan used to fund a 60% portion of the $2.68 million purchase price of a Gwinnett County home (the "Property"). The terms of the loan, an "Option ARM," allowed Mbigi to pick a monthly payment that was less than the amount needed to pay the accruing interest, resulting in negative amortization. Mbigi was not informed by Wells Fargo or the closing attorney that certain payment options would result in negative amortization. When Mbigi later inquired about the mortgage balance, which he had noticed was "very high," Wells Fargo told him that it would investigate and modify the loan. In December 2008, Wells Fargo told Mbigi to stop loan payments until the loan was modified. In 2009, Mbigi attempted to pay the loan in full, but Wells Fargo refused to accept the payment. Wells Fargo accepted a loan payment in 2010, but then informed Mbigi that he should not make further payments until the loan was modified. Wells Fargo later informed Mbigi that, because of the negative amortization, the loan had to be modified before he could resume payments, and that he should ignore any communications regarding mortgage payments. Mbigi continued to inquire with

_____

[2] Wells Fargo is the successor by merger to the original lender, World Savings Bank, F.S.B.

3

Wells Fargo about the loan modification status in 2011, 2012, and 2013. Wells Fargo then referred the loan to its attorneys for foreclosure, "at the same time it was purportedly working on a loan modification."

On February 8, 2014, Mbigi left the United States on business. While he was away, Well Fargo's counsel mailed the foreclosure sale notice to a previous notice address and not the address that Mbigi had requested in writing that Wells Fargo use for all correspondence. On June 3, 2014, Wells Fargo sold the Property in a foreclosure sale.

1. Mbigi asserted a claim against Wells Fargo for wrongful foreclosure. A claim of wrongful foreclosure requires the plaintiff to "establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (Citations, punctuation, and footnote omitted.) *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 448 (4) (662 SE2d 141) (2008). Under OCGA § 23-2-114, "[p]owers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." And "[t]he legal duty imposed upon a foreclosing party under a power of sale is to exercise that power fairly and in good faith." *Wells Fargo Bank, N.A. v. Molina-Salas*, 332 Ga. App. 641, 642 (1) (774 SE2d 712) (2015).

4

(a) In his complaint, Mbigi contended that Wells Fargo breached its duty to exercise the power of sale fairly and in good faith in that it failed to provide him with notice of the foreclosure sale in compliance with OCGA § 44-14-162.2 (a). Mbigi contends that the trial court erred in dismissing his wrongful foreclosure claim to the extent that the claim was based on this alleged breach of duty. We agree.

OCGA § 44-14-162.2 (a) provides, in relevant part, that the notice of the initiation of proceedings to exercise a power of sale shall be sent "to the property address or to such other address as the debtor may designate by written notice to the secured creditor." Id. In the complaint, Mbigi stated that he provided written notice to Wells Fargo of the designated address it was to use for all correspondence, but that Wells Fargo did not send the notice of the foreclosure sale to that address. The complaint does not disclose with certainty that Mbigi would not be entitled to any relief on account of his contention that Wells Fargo failed to provide the proper statutory notice of foreclosure. See *Farris v. First Financial Bank*, 313 Ga. App. 460, 464 (2) (722 SE2d 89) (2011) ("The plain language of OCGA § 44-14-162.2 (a) requires the secured creditor send notice to the property address *unless* the debtor designates in writing another address.") (Emphasis supplied; punctuation and footnote omitted). See also *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750,

5

753 (2) (a) (751 SE2d 545) (2013) (allegation that lender failed to provide notice of foreclosure as required by OCGA § 44-14-162.2 supported a wrongful foreclosure claim under Georgia law).

The trial court concluded that Wells Fargo's alleged failure to comply with the notice requirement afforded no basis for a claim of wrongful foreclosure because Wells Fargo had denied the allegation and maintained that it had provided Mbigi's counsel with copies of the notices sent to the Property's address. The order also referenced a copy of the notice of sale under power which was attached to the motion of a third party. Pretermitting whether anything referenced by the trial court, if later established, would conclusively establish that Wells Fargo complied with the statutory notice requirement, the attachment to a motion of a third party was not part of the pleadings in the case and could not be considered as part of the motion to dismiss. See, e.g., *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 751 n. 4 (751 SE2d 545) (2013) (attachment to a brief cannot be considered in a motion to dismiss). See also OCGA § 9-11-10 (c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). Wells Fargo's factual contentions constituted "evidence which may or may not be developed during discovery and can be considered on a subsequent motion for summary judgment."

6

*Austin v. Clark*, 294 Ga. at 775. If a trial court considers evidence outside the pleadings, then "when it does so it converts the motion to dismiss into a motion for summary judgment." *Babalola*, 324 Ga. App. at 751 n. 4. In such case, the trial court would have been required to inform Mbigi that he "would have no less than 30 days within which to submit his own evidence in response to the motion for summary judgment." (Citation and punctuation omitted.) Id. The trial court did not follow that procedure here, and Mbigi did not acquiesce to consideration of matters outside the pleadings. Accordingly, we conclude that the trial court erred in finding that Mbigi's claim that Wells Fargo breached its duty in failing to provide proper notice of the foreclosure sale showed no basis for a wrongful foreclosure claim.

(b) Mbigi also contended in his complaint that Wells Fargo breached its duty by failing to include in the notice of foreclosure "the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor," as required by OCGA § 44-14-162.2 (a). According to the complaint, the notice of foreclosure sale named Wells Fargo as the entity with such authority but, in fact, Wells Fargo did not have full authority to negotiate, amend and modify all terms of the mortgage. Rather, Mbigi contends that the entity with full authority was the owner of the note, and that the

owner of the note was an entity different than Wells Fargo. The trial court held that the complaint nevertheless failed to state any basis for a wrongful foreclosure claim because a reasonable person would construe Wells Fargo to be the proper agent of the entity with full authority, and that, in addition, Mbigi "appears to concede" that Wells Fargo had the authority to modify the loan by seeking a loan modification from Wells Fargo as part of the relief Mbigi sought in this action. Mbigi claims that the trial court erred in these rulings.

In *You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74 (2) (743 SE2d 428) (2013), the Georgia Supreme Court looked to the plain language of OCGA § 44-14-162.2 to determine whom the notice contemplated thereby must name. Under the statute, the Court noted, the notice must name "the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." (Citation and punctuation omitted.) *You*, 293 Ga. App. at 74 (2). Thus,

> [i]f that individual or entity is the holder of the security deed, then the deed holder must be identified in the notice; if that individual or entity is the note holder, then the note holder must be identified. If that individual or entity is someone other than the deed holder or the note holder, such as an attorney or servicing agent, then that person or entity must be identified. The statute requires no more and no less.

8

*You*, 293 Ga. at 74-75 (2).

Wells Fargo argues that its notice fully complied with OCGA § 44-14-162.2 because the complaint shows that it held the security deed, and under *You* the holder of the security deed may be the party identified under the statute. However, while the party to be identified might be the holder of the security deed, if that is the entity which has full authority to negotiate, amend, and modify the terms of the mortgage, the entity with such authority could also be "someone other than the deed holder," including, as alleged here, the owner of the note. *You*, 293 Ga. at 74 (2). Thus, Wells Fargo does not show, for purposes of the motion to dismiss, that it fully complied with OCGA § 44-14-162.2.

Moreover, Wells Fargo cannot show, for purposes of its motion to dismiss, that it substantially complied with the statute. This Court has "permitted substantial compliance with OCGA § 44-14-162.2 (a) in a limited circumstance involving the requirement to provide certain contact information." *Peters v. CertusBank Nat. Assn.*, 329 Ga. App. 29, 31 (3) (763 SE2d 498) (2014). See *TKW Partners v. Archer Capital Fund*, 302 Ga. App. 443, 445-446 (1) (691 SE2d 300) (2010) (notice that provided the name of the lender/secured party and the contact information for the lender's attorney, who had "as much authority as any individual to negotiate a loan

modification on [the lender's] behalf," substantially complied with OCGA § 44-14-162.2). See also *Stowers v. Branch Banking & Trust Co.*, 317 Ga. App. 893, 896 (1) (731 SE2d 367) (2012) (concluding that holding in *TKW Partners* stands for the principle "that substantial compliance with the contact information requirement of OCGA § 44-14-162.2 (a) is sufficient"). However, in *TKW Partners* and *Stowers*, the notice at issue provided contact information for the attorney for the entity with modification authority, which entity was named in the notice, and we have indicated that *TKW* and *Stowers* apply only to the limited circumstances of those cases. See *Peters v. CertusBank Nat. Assn.,* 329 Ga. App. at 31 (2). Because *You* requires that the entity with full authority be named in the notice, we conclude that Mbigi could introduce evidence, within the framework of his complaint, that the notice of foreclosure did not comply with OCGA § 44-14-162.2.

The trial court also found that, because Mbigi also sought relief from Wells Fargo by seeking a loan modification, he "appears to concede that Defendant Wells Fargo is the entity with full authority to modify the loan." However, even assuming that Mbigi's claims were inconsistent, he was free to plead alternative and inconsistent theories in his complaint. See *Southern v. Sphere-Drake Ins. Co.*, 226 Ga. App. 450, 451 (486 SE2d 674) (1997). See also OCGA § 9-11-8 (e) (2) ("A party

10

may also state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or on equitable grounds or on both."). The trial court erred in finding that the complaint's allegation that the notice of foreclosure failed to comply with OCGA § 44-14-162.2 (a) did not state any basis for a wrongful foreclosure claim.

(c) Mbigi further asserted in his complaint that Wells Fargo directed him to stop making payments on the loan in 2008, and then held him in default for failure to pay. Mbigi alleged that Wells Fargo's directive to stop making payments and his detrimental reliance thereon was sufficient consideration to support a "quasi-new agreement." He contends that Wells Fargo therefore breached its duty to exercise the power of sale fairly and in good faith by failing to provide him before it foreclosed with reasonable notice and opportunity to cure, as contemplated by OCGA § 13-4-4. The trial court found the alleged quasi-contract to be unenforceable because, among other reasons, an instruction "not to pay" could not constitute a quasi-contract. Mbigi claims that the trial court erred in dismissing his wrongful foreclosure claim to the extent the claim was based on the alleged "quasi-new agreement."

OCGA § 13-4-4 provides that

11

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

Under the statute, the parties must not only depart from the terms of the contract, but must also "pay or receive money under such departure." OCGA § 13-4-4. Thus, there could be no departure from the terms of the contract for purposes of OCGA § 13-4-4[3] if, as alleged, Mbigi complied with Wells Fargo's instruction not to make payments on the loan. See *Salahat v. FDIC*, 298 Ga. App. 624, 629 (3) (680 SE2d 638) (2009) (finding no mutual departure under OCGA § 13-4-4 where debtor ceased making payments after the Bank promised the debtor the "loan would be reworked"); *Gibson v. Gainesville Bank & Trust*, 226 Ga. App. 679, 681 (487 SE2d 460) (1997) ("While

---

[3] We note that a departure or modification from a contract can be accomplished other than by the exchange of money; however, the breach of duty alleged by the complaint arises from Wells Fargo's failure to take the actions required by OCGA § 13-4-4 before he could be held to the strict terms of the loan. See *Turem v. Sinowski & Jones*, 195 Ga. App. 829, 830 (1) (395 SE2d 60) (1990) (OCGA § 13-4-4 "sets forth a plain statutory consequence of the receipt or payment of money under a departure," but does not supplant other legal circumstances which would constitute a modification or novation).

12

a quasi-new agreement may arise where the parties mutually depart from the terms of an executory contract, to support such a departure there must be some evidence that money was paid or received under such departure.") (citations omitted).[4] The trial court did not err in concluding that, within the framework of the complaint, Mbigi's assertion that the parties to the loan had entered into a "quasi-contract" did not state any basis for a wrongful foreclosure claim.

2. Mbigi also asserted a claim against Wells Fargo for violation of the Georgia RICO statute. To establish "a civil RICO claim, [Mbigi] is required to show by a preponderance of the evidence that [Wells Fargo] violated the RICO statute, OCGA § 16-14-4, that [he] has suffered injury, and that [Wells Fargo's] violation of the RICO statute was the proximate cause of the injury." (Citations omitted.) *Cox v. Mayan Lagoon Estates Ltd.*, 319 Ga. App. 101, 109 (2) (b) (734 SE2d 883) (2012). To demonstrate a violation of OCGA § 16-14-4, Mbigi must "show an injury by a pattern of racketeering activity. A pattern requires at least two interrelated predicate

---

[4] Compare *Curl v. Federal Sav. & Loan Assn.*, 241 Ga. 29 (244 SE2d 812) (1978) (Where lender had accepted late and irregular payments for several years, preferring to contact borrower and convince her to make up the defaults, at least in part, and where lender failed to give notice of intention to insist on compliance with the exact terms of the agreement prior to accelerating the loan, lender failed to show that the borrower's complaint lacked any essential element of a cause of action under OCGA § 13-4-4.).

13

offenses." (Citations omitted.) *Brown v. Freedman*, 222 Ga. App. 213, 217 (3) (474 SE2d 73) (1996).

Mbigi identified seven different acts or omissions which, he contended, constituted residential mortgage fraud and were part of a fraudulent scheme to wrongfully foreclose on his home. Mbigi also claimed that Wells Fargo committed an additional predicate act by stealing the equity in his home through the wrongful foreclosure. The trial court found that Mbigi's allegations could not form the basis of a RICO claim because Mbigi "has not demonstrated that Wells Fargo acted improperly." The trial court further concluded that the acts alleged by Mbigi could not constitute a pattern of racketeering activity because the acts arose from the same transaction. Mbigi contends that the trial court erred in failing to consider whether his allegations could form the basis of a RICO claim, and that two acts taken in furtherance of one transaction is sufficient to show a pattern of racketeering activity.

Under OCGA § 16-14-3 (8) (A) (2014),[5] to constitute a pattern of racketeering activity, the acts of racketeering must be taken "in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results,

---

[5] This provision was renumbered as OCGA § 16-14-3 (4) (A), effective July 1, 2015. See Ga. L. 2015, p. 693, § 2-25.

14

accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics[.]" (Emphasis supplied) OCGA § 16-14-3 (8) (A) (2014). The statute was amended in 2001 to provide the acts be taken "in furtherance of *one* or more incidents, schemes, or transactions," (emphasis supplied) and so we cannot agree with the trial court that, if the alleged predicate acts were taken in furtherance of one transaction, then Mbigi's RICO claim must necessarily fail. See Ga. L. 2001, p. 858, § 1. Compare *Cobb v. Kennon Realty Svcs.*, 191 Ga. App. 740, 741-742 (2) (382 SE2d 697) (1989) (Trial court correctly granted summary judgment as appellant failed to allege any pattern of racketeering activity in his complaint, and the evidence submitted concerned one extended transaction between appellant and appellees.).

Further, theft by deception and residential mortgage fraud, if shown, would constitute RICO predicate acts. See OCGA § 16-14-3 (9) (A) (ix) (2014); OCGA § 16-14-3 (9) (A) (xl) (2014). Wells Fargo does not contest that the alleged act of theft could be a predicate act. Wells Fargo argues, however, that five of the acts alleged to be residential mortgage fraud are not crimes for purposes of OCGA § 16-8-102 and that the other two acts, which involved allegations of misrepresentations and omissions that must have occurred at or before the loan closing in 2007, were too

15

remote to be part of a pattern of racketeering activity for purposes of OCGA § 16-14-3 (8) (A) (2014).[6]

Pretermitting whether Wells Fargo is correct that some of the predicate acts alleged by Mbigi could not constitute residential mortgage fraud for purposes of OCGA § 16-8-102, one of the alleged predicate acts is that Wells Fargo filed the deed under power in the Gwinnett County records with at least one false statement. Wells Fargo contends that the recording of the deed under power, even if the deed contained a false statement, could not have been done with the intent to defraud Mbigi because his interest in the property had been foreclosed upon before the deed was filed.

A person commits residential mortgage fraud when, as pertinent here, such person, "with the intent to defraud," "[f]iles or causes to be filed with the official

---

[6] To the extent that Wells Fargo suggests that OCGA § 16-13-3 (8) (A) (2014) requires that the last predicate act be committed within four years of the filing of the complaint, that is not what the statute provides. Compare OCGA § 16-14-8 (2014) (civil action "may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues."). However, its contention that Mbigi could not show any acts of residential mortgage fraud following the closing of the loan in 2007 is relevant. For purposes of OCGA § 16-14-3 (8) (A) (2014), a pattern of racketeering activity requires "[e]ngaging in at least two acts of racketeering activity . . . *provided . . . that the last of such acts occurred within four years . . . after the commission of a prior act of racketeering activity*." (Emphasis supplied.). Thus, an act of racketeering activity in 2014 could not be considered the last act of a *pattern* of racketeering activity if the prior act of racketeering activity occurred in 2007.

16

registrar of deeds of any county of this state any document such person knows to contain a deliberate misstatement, misrepresentation, or omission." OCGA § 16-8-102 (5). To "defraud," in its ordinary meaning, is to "[t]o deprive of some right, interest, or property by a deceitful device; to cheat; to overreach." *Berry v. State*, 153 Ga. 169, 174 (111 SE 669) (1922).[7] A deed under power is required to be filed following foreclosure and, if certain recitations are contained therein, will serve to protect the validity of title of subsequent purchasers in good faith. See OCGA §§ 44-14-160 (a); 44-14-162.4. As the recording of the deed under power could have deprived Mbigi of a valuable interest, and therefore defrauded him, the complaint does not show with certainty that Mbigi would not be able to show that the recording of the deed under power was an act of residential mortgage fraud. Accordingly, as Mbigi's complaint alleges that he was injured by at least two predicate acts which could constitute a pattern of racketeering activity, Wells Fargo does not show that Mbigi "could not possibly introduce evidence within the framework of the complaint" sufficient to grant relief on the RICO claim. (Citation and punctuation omitted.)

---

[7] See OCGA § 1-3-3 (b) (Other than words of art or words connected with a particular trade or subject matter, "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words.").

17

*Stendahl v. Cobb County*, 284 Ga. at 525 (1). It follows that the trial court erred in dismissing Mbigi's RICO claim.

3. Mbigi contends that the trial court erred in dismissing his claims of fraudulent and negligent misrepresentation. Mbigi asserted in his complaint that Wells Fargo made false statements which induced Mbigi into defaulting on the loan, and that he reasonably relied thereon when he stopped making loan payments. Wells Fargo argued below that Mbigi's fraud and negligent misrepresentation claims were barred by the statute of limitations because they arose from a statement made by Wells Fargo in December of 2008, and that the four year statutory period of limitation ran before Mbigi asserted the claims in 2014. The trial court agreed and dismissed the two counts. On appeal, as he did below, Mbigi argues that he did not suffer harm for which he could recover damages until his home was foreclosed upon in June 2014, and that, as a consequence, the claims accrued within the time allowed under the statute of limitation.

A four year statute of limitation applies to actions for fraud and negligent misrepresentation. See OCGA § 9-3-31; *Willis v. City of Atlanta*, 265 Ga. App. 640, 643 (595 SE2d 339) (2004); *Shapiro v. Southern Can Co.*, 185 Ga. App. 677, 677-678 (365 SE2d 518 (1988). Further,

18

[i]t has been long recognized and is well established that a statute of limitation begins to run on the date a cause of action on a claim accrues. In other words, the period within which a suit may be brought is measured from the date upon which the plaintiff could have successfully maintained the action.

(Citations omitted.) *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (1) (273 SE2d 16) (1980). See *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (1) (569 SE2d 495) (2002) ("The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained his or her action to a successful result.") (citation and punctuation omitted.).

Nevertheless, "[t]o establish a cause of action for fraud, a plaintiff must show that actual damages, not simply nominal damages, flowed from the fraud alleged." *Glynn County Fed. Employees Credit Union v. Peagler*, 256 Ga. 342, 344 (2) (348 SE2d 628) (1986). And, as to negligent misrepresentation, "in a claim for economic injury sustained due to reliance upon false information negligently provided by a defendant, the statute of limitation begins to run when the plaintiff suffers pecuniary loss with certainty, and not as a matter of pure speculation." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas*, 267 Ga. 424, 428 (1) (479 SE2d 727) (1997). The complaint does not show that Mbigi was necessarily damaged in

19

December 2008, at the time of the allegedly false representation, such that he could have successfully maintained an action for fraud or negligent misrepresentation at that time. See id. at 427 (1) (finding that "until it suffered economic loss, [appellant] did not even *have* a claim for negligent misrepresentation"). It follows that the complaint did not show with certainty that Mbigi's claims for fraud and negligent misrepresentation were barred by the statute of limitation, and the trial court erred when it dismissed those claims. See, e.g., *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. at 805 (1) ("Georgia recognizes the accrual of a right of action for a tort when there is a violation of a specific duty accompanied with damage.") (citations omitted).

4. Mbigi claims that the trial court erred in dismissing his claim for intentional infliction of emotional distress. The elements of the tort are: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." (Citation and punctuation omitted.) *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985). See *Odem v. Pace Academy*, 235 Ga. App. 648, 654 (2) (510 SE2d 326) (1998) (accord).

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been extreme and outrageous.

(Punctuation and footnote omitted.) *Jarrard v. United Parcel Svc.*, 242 Ga. App. 58, 61 (529 SE2d 144) (2000). "Whether the alleged conduct is sufficiently extreme or outrageous is a question of law for the trial court." (Punctuation and footnote omitted.) *Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819, 823 (4) (658 SE2d 433) (2008).

An intentional wrongful foreclosure may be the basis for an action for intentional infliction of emotional distress. See *Blue View Corp. v. Bell*, 298 Ga. App. 277, 279 (1) (679 SE2d 739) (2009); *DeGolyer v. Green Tree Servicing*, 291 Ga. App. 444, 449-450 (4) (662 SE2d 141) (2008). Wells Fargo contends that the circumstances alleged by the complaint are nevertheless not sufficiently outrageous and extreme. We disagree. Mbigi could show, within the framework of the complaint, not only that Wells Fargo wrongfully foreclosed on his home, but that it engineered a default on the loan by instructing Mbigi not to pay, lied about why it could not

21

accept payment, and improperly refused to accept Mbigi's attempt to pay the loan in full. See *Webb v. Bank of America*, 328 Ga. App. 62, 62-63 (761 SE2d 485) (2014) (allegations in the complaint, which included that lender intentionally refused to accept loan payments and intentionally breached the loan modification agreement could, within the framework of the complaint, warrant a grant of the relief sought, which included wrongful foreclosure and intentional infliction of emotional distress); *DeGolyer v. Green Tree Servicing*, 291 Ga. App. at 448-449 (4) (evidence supported claim for intentional infliction of emotional distress where party proceeded with foreclosure and sale after being told it was foreclosing on the wrong tract of property); *Blanton v. Duru*, 247 Ga. App. 175, 178-179 (5) (543 SE2d 448) (2000) (trial court's award of damages for intentional infliction of emotional distress affirmed, where foreclosure proceedings were instituted under a security deed that the court had ordered to be canceled). Compare *James v. Bank of America, N.A.*, 332 Ga. App. 365, 368 (3) (772 SE2d 812) (2015) (physical precedent only) (failure to provide proper notice of foreclosure was not extreme or outrageous conduct); *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 174 (1) (733 SE2d 457) (2012) (allegation that appellees conducted a foreclosure sale despite knowledge of inaccuracies in published foreclosure notice was not extreme or outrageous conduct).

22

Accordingly, we conclude that the trial court erred in dismissing Mbigi's claim for intentional infliction of emotional distress.

5. Mbigi further contends that the trial court erred in dismissing his claim for breach of duty of good faith and fair dealing. "This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance." (Citation and punctuation omitted.) *Brown v. Freedman*, 222 Ga. App. 213, 216 (2) (474 SE2d 73) (1996).

The trial court found that Mbigi failed to plead or otherwise demonstrate a breach of contract by Wells Fargo, and so dismissed his claim of breach of the implied duty of good faith and fair dealing. Although "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement, . . . the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." (Footnote and punctuation omitted.) *OnBrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 147 (2) (c) (687 SE2d 168) (2009). Thus, "to prevail on [his] claim for breach of the duty of good faith and fair dealing, [Mbigi] must establish that [Wells Fargo] owed a contractual obligation. . . . And to prevail on [his] claim for breach of an

implied duty of good faith and fair dealing, [Mbigi] must demonstrate that [Wells Fargo] somehow violated . . . an implied duty." Id.

In this case, the complaint alleged that Wells Fargo was a party to the security deed, and, with respect to the breach of duty of good faith and fair dealing, that Wells Fargo's acts "reflect a failure by Wells to perform the promises required by the contract, and to provide such cooperation as was required for [Mbigi] to perform under the contract." Thus, Mbigi's claim is not independent of a contractual obligation by Wells Fargo. See generally *Brown v. Freedman*, 222 Ga. App. at 216 (2) (finding that trial court did not err in denying claim for breach of duty of good faith and fair dealing in performance and enforcement of security deed). And a lender's alleged bad faith in inducing a default under a security deed may constitute a breach of its implied duty of good faith and fair dealing. See *West v. Koufman*, 259 Ga. 505, 506 (384 SE2d 664) (1989) (where security deed provided for a default thereunder if liens were filed against the property and not removed within 30 days, grantee's conduct in soliciting third parties to file false liens against the property, if proved, could constitute breach of the duty of good faith and fair dealing). Accordingly, as the complaint does not show with certainty that Mbigi would not be entitled to relief under any state of provable facts asserted in support thereof, we find

24

that the trial court erred in dismissing Mbigi's claim for breach of the implied duty of good faith and fair dealing.

6. Lastly, Mbigi contends that the trial court erred in dismissing his claim for promissory estoppel. The elements of promissory estoppel are: "the defendant made a promise upon which he reasonably should have expected the plaintiff to rely, the plaintiff relied on the promise to his detriment, and injustice can be avoided only by enforcing the promise because the plaintiff forwent a valuable right." (Citation omitted.) *Thompson v. Floyd*, 310 Ga. App. 674, 682 (3) (713 SE2d 883) (2011). See OCGA § 13-3-44.

The complaint alleges that in 2007, in response to Mbigi's inquiry concerning his mortgage balance, Wells Fargo advised him that it "was going to investigate and modify the loan." Wells Fargo thereafter directed Mbigi in 2008 and 2010 to cease making mortgage payments until the loan was modified, and told him, in or after 2011, that the loan "had to be modified before he could resume payment." Notwithstanding Mbigi's subsequent inquiries and his repeated submission of modifications proposals, Wells Fargo never processed his loan for a modification.[8]

---

[8] Mbigi's complaint also alleged that a 2010 class action settlement agreement entered in the United States District Court for the Northern District of California regarding the "Option ARM" loans, such as the loan which had been made to Mgibi,

25

The trial court concluded that because Mbigi had alleged that Wells Fargo promised to provided financing in the future, but did not specify any terms, the promise was too indefinite to be enforced. "Promissory estoppel does not . . . apply to vague or indefinite promises, or promises of uncertain duration." (Citation omitted.) *Ga. Investments Intl. Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 673, 676 (1) (700 SE2d 662) (2010). The trial court also found that the promissory estoppel claim failed because Mbigi sought damages rather than enforcement of the alleged promise.

In his complaint, Mbigi gave notice that he contended Wells Fargo made promises to modify the loan through at least 2011, and that he relied on those promises to his detriment by complying with Wells Fargo's directives to withhold payments on the loan. Mbigi was not required to set forth every material term of the alleged promises in the complaint to avoid dismissal of his claim. See, e.g., *Scott v. Scott*, 311 Ga. App. 726, 729 (716 SE2d 809) (2011) (trial court erred in concluding that plaintiff was required to allege additional facts sufficient to support a claim for

"required Wells to offer [him] a loan modification." In his reply brief, Mbigi concedes that he cannot base a promissory estoppel claim on account of any loan modification procedure contemplated thereby; however, the complaint does not show that the promises on which Mbigi relied were necessarily related to the settlement agreement.

26

change of custody from parent to grandparent where petition gave fair notice of the claim). See also *Austin v. Clark*, 294 Ga. at 775 (At the motion to dismiss stage, it did "not matter that the existence of [facts that would be required to show a violation of ministerial duty, the pivotal determination in the case] is unlikely.").[9]

Nor does the complaint show that Mbigi would not be entitled to any relief on the claim for promissory estoppel. Mbigi prayed for both damages and that "he be allowed to complete the loan modification process." Pretermitting whether the alleged promise to modify the loan could be enforced after foreclosure, Mbigi was not precluded from recovering damages. "Under [a] promissory estoppel theory, [plaintiff] may recover those damages as are equitable and necessary to prevent injustice from occurring." (Punctuation and footnote omitted.) *Hendon Props. v. Cinema Dev.*, LLC, 275 Ga. App. 434, 441 (3) (620 SE2d 644) (2005).[10] See OCGA

---

[9] See also *Funderburk v. Fannie Mae*, 2014 U.S. Dist. LEXIS 41689 (N.D. Ga. 2014) (II) (E) (claim that agent for defendant promised to modify loan if she made a payment on her account, then denied the modification and conducted foreclosure proceedings, supported a claim for promissory estoppel under Georgia law).

[10] See also *Insilco Corp. v. First Nat. Bank*, 248 Ga. 322, 323 (2) (283 SE2d 262) (1981) (trial court erred in dismissing complaint as it did not show with certainty that appellant would not be entitled to relief under the doctrine of promissory estoppel; the complaint prayed for damages on account of appellant's reliance on appellee's promises).

27

§ 13-3-44 ("The remedy granted for breach may be limited as justice requires."). As Wells Fargo does not show that Mbigi could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief on his claim for promissory estoppel, the trial court erred in dismissing the claim.

*Judgment affirmed in part and reversed in part. McFadden, J., concurs. Dillard, J., concurs in judgment only*.

A15A2067. MBIGI v. WELLS FARGO HOME MORTGAGE.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent. *See* Court of Appeals Rule 33 (a).